NICHOLAS M. WOOLDRIDGE
Nevada State Bar No. 8732
WOOLDRIDGE LAW, LTD.
400 South 7th Street, 4th Floor
Las Vegas, NV 89101
Telephone: (702) 330-4645
Facsimile: (702) 359-8494
nicholas@wooldridgelawlv.com
Attorney for Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:19-CR00304-RFB-VCF |
| Plaintiff, | : | |
| v. | : | |
| LATONIA SMITH, | : | |
| Defendant. | : | |

**MOTION TO RECONSIDER ORDER OF DETENTION AND MOTION FOR RELEASE PENDING TRIAL PURSUANT TO 18 U.S.C. § 3142(c)**

COMES NOW, LATONIA SMITH ("the Defendant"), by and through her undersigned counsel, and files this, her Motion for Release Pending Trial Pursuant to 18 U.S.C. § 3142(c) and requests an order from this Court releasing the Defendant on conditions pending trial.

This motion is based on the following Memorandum of Points and Authorities, all other papers and pleadings on file with the Court, and any oral argument or evidentiary hearing the Court may permit.

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

This Court ordered Ms. Latonia Smith (hereinafter, "Ms. Smith" or "the Defendant") detained pending trial on the basis of a finding of a danger to the community. This Court's detention order states, in relevant part, as follows:

> The defendant is ordered detained as a danger to the community as that term is defined by The Bail Reform Act for the following reasons: While the weight of the evidence is the least significant factor for the Court to consider, it is a factor that should nonetheless be reviewed as required by The Bail Reform Act. The Court is troubled by the information that it has received in this case, particularly that the defendant traveled to Reno, NV from Las Vegas, NV to encounter one of the victims. Whether she forced her way into his apartment or whether she knocked him to the ground or not isn't being taken into account as much as the fact that it appears she pointed what appeared to be a Glock 17 at him on Halloween night when he would be much more willing to open his door to anyone, which seems like a calculated move on the part of the defendant. Further, this happened after the United States Postal Inspector talked to the defendant, after two different Temporary Protection Orders were filed against her. It appears that the defendant's conduct has been slowly but surely escalating to a point which culminated with a barricade situation on November 1, 2019. The Court agrees with defense counsel that people can react poorly when confronted with something they do not believe they are guilty of, however that is not a justification to barricade themselves and it is of concern to the Court because it may be indicative that she may not be willing to follow the directions of those in a position of authority. The Court also agrees with defense counsel that the defendant does have a First Amendment right to say what she believes to be the case regarding the courts and judges, and she is not faulted for making those representations, however it raises a question of whether she will take the courts seriously and it does appear that, based on her beliefs of the court system, she does not take the courts seriously. The Court does take into account the lack of any prior criminal history for the defendant, which goes to her favor, but based on all of the findings and information that have been placed on the record the defendant shall be ordered detained pending further proceedings.

The Court's denial of bail was based solely on the Court's belief that Ms. Smith posed a danger to the community. As explained at the hearing, the Government concedes that Ms. Smith did not possess a firearm. It was a BB-gun (an air gun). At the initial detention hearing, the Government represented that Wade Beavers, an alleged victim in the case, was in his home awaiting trick or

treaters on October 31, 2019 when unbeknownst to him, Mr. Smith allegedly showed up at his residence and barged into his door and purportedly held him at gun point.

Interestingly, and a fact that supports a change in circumstances, is evidence Mr. Beaver gave to law enforcement. Specifically, Mr. Beaver acknowledged and admitted that he actually got out of his vehicle at the entry gate of his apartment complex prior to the alleged assault, and let a blue Infiniti into the gated community. Mr. Beaver admittedly had dealt with Ms. Smith in the past and had appeared at hearing where Ms. Smith was a litigant. Inferably, Mr. Beavers was well aware of Ms. Smith and what she looked like. Upon information and belief, Ms. Smith was the driver of the blue Infiniti SUV. Such evidence controverts the Government's theory and requires a review of Ms. Smith detention order. Moreover, the Court's detention order does not appear to have explored or taken into consideration whether there are conditions or a combination of conditions that would mitigate any purported danger to the community.

As shown below, there is no good reason to keep Ms. Smith in detention until the time of trial. Ms. Smith does not pose a risk of flight nor danger to the community as demonstrated by her strong ties to the community and lack of any previous criminal history. Moreover, any risk of flight or danger can mitigated through imposition of pretrial restrictions, including, third-party custodian, GPS monitoring, curfew, consent to random searches, installation of a pen register, and a variety of other restrictions. Therefore, because Ms. Smith does not pose a risk of flight nor danger to the community and because there are conditions or a combination of conditions that would assuage any concerns this Court may have, she should be released on conditions pursuant to 18 U.S.C. § 3142(c) pending trial.

///

///

## II. MS. SMITH SHOULD BE RELEASED PENDING TRIAL

### A. APPLICABLE LEGAL STANDARD

Bail is best viewed as a permissible regulatory, or preventative, measure for use by the courts, rather than being punitive in nature. *See United States v. Salerno*, 481 U.S. 739, 747 (1987). This is because "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id*. 481 U.S. at 747. The Bail Reform Act of 1984 requires the release of persons facing trial under the least restrictive conditions that will reasonably assure the appearance of that person at trial. 18 U.S.C. 3142(c)(2). *See also United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). The jurisprudence that individuals facing trial must be released on such conditions reflects the traditional principle that "[f]ederal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). "The command of the Eighth Amendment that 'Excessive bail shall not be required,' at the very least obligates judges passing upon the right to bail to deny relief only for the strongest of reasons." *Sellers v. United States*, 89 S. Ct. 36, 38 (1968). Any doubt regarding the propriety of release should be resolved in favor of a defendant. *Herzog v. United States*, 75 S. Ct. 349, 351 (1955).

The Bail Reform Act requires release of a defendant prior to trial unless a judicial officer determines that no conditions or combination of conditions exist which will "reasonably assure the appearance of the person." 18 U.S.C. § 3142(c). Under the Act, when the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a "preponderance of the evidence." *See United States v. Chimurenga*, 760 F.2d 400, 405. That preponderance must, of course, go to the ultimate issue: that no combination of

conditions—either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful can "reasonably" assure that the defendant will appear for trial. 18 U.S.C. § 3142(c). The Act sets out a number of conditions which may be imposed to ensure a defendant's appearance, including, inter alia, remaining in custody of a designated person who agrees to assume supervision and to report any violation of a release condition; maintaining employment; abiding by restrictions on place of abode or travel; reporting on a regular basis to a designated law enforcement agency; complying with a curfew; executing a bail bond; and a final catch-all for any condition that the magistrate or judge deems "reasonably necessary" to assure the defendant's appearance. 18 U.S.C. § 3142(c).

Under 18 U.S.C. § 3142(e), a defendant shall be detained pending trial if, after a hearing pursuant to subsection (f), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). To determine whether such condition or combination thereof exists, courts consider available information regarding: (1) the nature of the circumstances charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person of the community that would be posed by the person's release. *Id*. at § 3142(g). To justify detainment, the government must show by clear and convincing evidence that no such condition(s) will reasonably assure the safety of the community or by a preponderance of the evidence that no such conditions will reasonably assure the defendant's appearance.

B.     **Ms. Smith Does Not Pose a Risk of Flight**

Pretrial release should be denied only for the strongest of reasons. *See United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985). In *Motamedi*, the Court ruled against the government,

because the determination that the defendant possessed a serious risk of flight, warranting denial of pretrial bail, was not established by preponderance of the evidence, notwithstanding that the defendant, an Iranian citizen, was charged with exporting military items without a license and after being warned that it was illegal to do so, where the defendant had been admitted for permanent residence, the defendant had been living in Los Angeles area since 1976 and had applied for citizenship, defendant had relatives in Los Angeles area, many of whom were citizens, and the defendant had no prior criminal record and no history of alcohol or drug abuse. *Id.* at 1403-1405.

Here, Ms. Smith is not a flight risk.  She has strong ties to the State of Nevada based on her residence, her family members, and past employment.  Her mother is willing to be a third-party custodian and execute an appearance bond on her behalf. Thus, Ms. Smith has strong ties to her friends, family and local community and thus does not pose a risk of flight. *See United States v. Taitz*, 130 F.R.D. 442, 445 (S.D. Cal. 1990) (no risk of flight where defendant "has substantial family ties" and "has made a substantial time commitment toward [his business's] success," and "has overwhelming support from family and friends").

More crucially, the proposed bail conditions insure that Ms. Smith will appear at any and all future court hearings. She understands that failure to do so will deprive her of clearing her name and would cause significant financial harm to her family. She has no plans to run away and leave Clark County if she is released on bond.  She will show up whenever there is a hearing before this court.

Additionally, as a part of her bail conditions, discussed *infra*, she will agree to electronic monitoring.  The electronic monitoring which the defendant has proposed as a condition of her release substantially rebuts both the allegation of flight and the ability of the defendant to be

physically able to flee or to pose a risk to the community.  As the Court of Appeals for the First Circuit noted, "the effectiveness of the bracelet alone arguably rebuts the presumption of flight." *United States v. O'Brien*, 895 F.2d 810, 816 (1st Cir. 1990).  The conditions proposed by the defendant, combined with her strong ties to her family and community rebut any allegation that if released the defendant will flee and thus render the government's claims insufficient to justify the defendant's detention pending trial.

C.      **Ms. Smith Does Not Pose A Danger to the Community**

The Court's denial of bail was based solely on the Court's belief that Ms. Smith posed a danger to the community. As explained at the hearing, the Government concedes that Ms. Smith did not possess a firearm. It was a BB-gun (an air gun).  Moreover, inferably the Court relied on the Government's theory that Mr. Beavers was allegedly taken by surprise by Ms. Smith showing up at his residence, and purportedly assaulting him.   In actuality, and according to the discovery, and upon information and belief Mr. Beavers actually let Ms. Smith into the complex.  Upon information and belief, Ms. Smith was driving the blue Infiniti SUV, that Mr. Beaver's described.  Such evidence flies in the face of the Government's theory, and supports the defense theory that Mr. Beavers was well aware that Ms. Smith was going to his apartment that night, and agreed to their meeting.  Moreover, the Court's detention order does not appear to have explored or taken into consideration whether there are conditions or a combination of conditions that would mitigate any purported danger to the community.

The government bears the burden of proof in establishing that release should be denied based on a danger to the community by "clear and convincing" evidence.  Here, the government has completely failed to do so. *Cf. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor

of the defendant.") Citing *United States v. Santos Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (internal citations omitted).

The *Motamedi* Court explained the difference between the burden of proof for danger to the community and for flight risk in the context of the Bail Reform Act in this passage:

> Differential treatment comports with the congressional recognition of danger to another or to the community as a discrete, independent basis for the denial of pretrial release. Since bail was determined under the former law by the likelihood of defendant's appearance at trial, and without explicit recognition of the need to protect the community, it is reasonable to subject the Government to a higher standard of proof when the second purpose is added as an explicit statutory category. Further, a finding of danger to the community is likely to involve more specific and quantifiable evidence than is a finding of risk of flight. For instance, prior convictions, police reports, and other investigatory documents are, as a matter of course, used to show past histories of violence. From these objective sources, trial judges may infer a present danger to the community. Such data is not often available regarding the risk of flight. Thus, it is wholly feasible for the Government to satisfy the higher burden in showing danger to the community. In concluding that the Government's burden in denying bail on the basis of flight risk is that of the preponderance of the evidence, we are not unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons.

*Motamedi*, 767 F.2d at 1407. *See also United States v. Vasconcellos*, 519 F. Supp. 2d 311, 316 (N.D.N.Y. 2007) (The government carries an even higher burden if it seeks to prove that the defendant is dangerous, in which case its burden is proof by clear and convincing evidence.)

Even if the government satisfies this higher burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal citations omitted). This is not a case where no conditions or combination of conditions can assure or at least mitigate any risk of danger to the community.

Here, Ms. Smith's strong family and community ties and the availability of numerous conditions available to this Court, consistent with 18 U.S.C. § 3142(c), including electronic monitoring, residence and supervision by a third party custodian, prohibition on the possession or use of any weapons of any kind or nature, pen register/telephone monitoring, home confinement and/or house arrest, as well as surrender of her passport, refute any allegation by the government that Ms. Smith should be detained based on "danger to the community." *Id.*

### D.     Proposed Bail Package

The defendant proposes that pursuant to 18 U.S.C. 3142(c)(B), she be released pending trial on the following conditions:

(1)     Remain in the custody of her mother who will agree to assume supervision and to report any violation of a release condition to the Court. She will assure the Court that the defendant will appear as required and will not pose a danger to the safety of any other person or the community. The proposed custodian will assure this Court that she will fully monitor the defendant's compliance with any and all release conditions and should the defendant violate any imposed condition in any regard, he or she will immediately so notify Pretrial Services.

(2)     The defendant shall remain in home confinement pending trial at her mother's residence and wear a GPS monitor. If requested by this Court, the defendant will also agree to (a) removal of any and all weapons, to the extent they exist, from the residence, as well as installation of a pen register, or agree to random searches and/or visits by Pretrial Services to monitor her compliance with the bail conditions, (b) agree to a strict curfew, (c) no internet access, (c) agree not to contact any victims or potential witnesses in this case, and (d) agree to refrain from possessing any weapons of any kind or nature;

(3) Further, Ms. Smith will surrender her passport to Pretrial Services and will agree not to apply for any new travel documents;

(4) Ms. Smith will execute a $50,000.00 unsecured appearance bond;

(5) Ms. Smith's mother will execute a $50,000 unsecured appearance bond to assure this Court that she will take her responsibility seriously and insure that Ms. Smith complies with any and all conditions ordered by this Court;

(6) The standard conditions of release; and

(7) The defendant shall satisfy any other conditions that are reasonably necessary to assure his appearance as required and to assure the safety of any other persons and the community.

The above-proposed conditions provide sufficient security to insure that Ms. Smith will appear for any and all proceedings in this case and insure the safety of the community.  If, however, this Court concludes that the defendant presents either a risk of flight or danger to the community, the government's proof must go further and demonstrate that no condition or combination of conditions would assure the safety of any person and the community.  *United States v. Chumrenga*, supra.  The release conditions proposed by the defendant eliminate any possibility that the defendant would or could pose a threat or a risk of flight.  Importantly, Ms. Smith's mother is a suitable custodian who would be in the most opportune position to assist this Court in monitoring the defendant's compliance with her conditions of release.  Most crucially, the defendant's mother has offered to execute appearance bonds on the defendant's behalf and, thus, the defendant would stand to jeopardize her relationship with her mother, as well as, stand to suffer significant financial loss, should the defendant fee and/or violate a release condition.

///

### III.  CONCLUSION

**WHEREFORE**, for all the foregoing reasons, the defendant does not pose a risk of flight or danger to the community and her motion for reconsideration of the order of detention and motion for release pending trial should be granted and Ms. Smith should be released upon conditions pending trial.

DATED this 31st day of December 2019.       LATONIA SMITH,
                                             by her attorney,


                                             */s/ Nicholas M. Wooldridge*
                                             _____
                                             Nicholas M. Wooldridge, Esq.
                                             Wooldridge Law Ltd.
                                             400 South 7th Street, 4th Floor
                                             Las Vegas, NV 89101
                                             nicholas@wooldridgelawlv.com
                                             (702) 330-4645 Tel.
                                             (702) 359-8494 Fax.


### CERTIFICATE OF SERVICE

I hereby certify that on 31st of December, 2019, I electronically filed the foregoing Motion for Reconsideration of the Order of Detention and Motion for Release Pending Trial with the Clerk of the United States District Court for the District of Nevada using the CM/ECF system. I certify that all parties to the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                             */s/ Melody Phommaly*
                                             _____
                                             An employee of Wooldridge Law