Telia Mary U. Williams, Esq.
Nevada Bar No. 9359
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Tel: (702) 835-6866
telia@telialaw.com

Gwynne R. Dumbrigue, Esq.
Nevada Bar No. 10031
GRD Law Group, LTD.
1819 E. Charleston Blvd., Ste. 101
Las Vegas, Nevada 89104
attorneydumbrigue@gmail.com

*Attorneys for Defendant,
Latonia Smith*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:19-cr-00304-RFB-VCF-1 |
| Plaintiff, | |
| vs. | **MOTION TO DISMISS INDICTMENT** |
| LATONIA SMITH, | |
| Defendant. | |

Latonia Smith, by way of her counsel, Telia Mary U. Williams, Esq., and

Gwynne R. Dumbrigue Esq., moves to dismiss the indictment against her for the

following reason:

Even taking all of the Government's *factual allegations as true,* the

Government does not make out a criminal case against Ms. Smith.  This court can

decide, as a matter of law, without the necessity of a trial, that the facts alleged do

1

not rise to a criminal offense.  That is because precisely none of the letters that the Government has alleged Ms. Smith sent to other persons, in violation of 18 U.S.C. § 876(c) ("mailing threatening communications"), actually amount to a "true threat," as required by the law.  However unsettling or disturbing, if the letters that the Government intends to prove at trial as being drafted and mailed by Latonia Smith, are not true threats in themselves, then the issue is entirely moot.  The case against Latonia Smith should not proceed to a jury.  *See United States v. Qazi*, 975 F.3d 989 (9th Cir. 2020) (An indictment missing an essential element that is properly challenged before trial must be dismissed).

## I.   The Government Does Not and Cannot State a Criminal Claim Against Latonia Smith.

### 1.   876(c) requires that a defendant issue a "true threat."

The Crime of mailing threatening communications is very specific.  Federal law makes it a crime to "knowingly…deposit [] or cause[] to be delivered…any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing…any threat to injure the person of the addressee or of another."  *See* 18 USC 876(c).

But what is equally specific is that this law must be interpreted in a way that does not conflict with the First Amendment: "This statute 'must be interpreted with the commands of the First Amendment clearly in mind."  *Watts v. United States*, 394 U.S. 705 (1969) (*per curiam*).  The First Amendment prevents prosecution for someone sending messages that are not "true threats."  *Virginia v. Black*, 538 U.S. 343 (2003) made this more than clear.  The United States Supreme Court held in

2

*Virginia v. Black,* that under the First Amendment, the State can punish threatening expression, but only if the "speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *See id.* at 359.  What that means in practical terms, considering the relevant case law, is that a "a true threat" does not exist simply because a defendant has made or issued a vile, unpleasant, offensive, vituperative, *or even a threatening* statement.  For mere words to constitute a crime, and not violate the First Amendment (let alone the Due Process clause), there must be a **"true threat."**  *See Mabie v. Bell*, 2019 WL 11671983 (S.D., Ind. 2019) (Emphasis added).  For a "true threat" to exist, the defendant must have used undeniable language that unequivocally and unambiguously demonstrate a specific intention, *on the part of that defendant himself or herself*, to threaten to inflict pain or injury on another person.  Words that simply indicate that the defendant <u>hopes</u> or <u>predicts</u> that pain, injury, harm, or other hostile action *will befall a person*— or wishes or discussions regarding that end, or even discussing the inevitability of such harm happening—even imminently—<u>are</u> <u>not</u> <u>criminal</u>.

Perhaps the most clear case elucidating this distinction between mere threatening language (which is not criminal), and *true threats* (which are criminal), is the Ninth Circuit case, *United States v. Bagdasarian.  See* 652 F.3d 1113 (9th Cir. 2011).  Even though *Bagdasarian* involves a threats statute different than the one presented here, it is more than a little analogous to these charges against Latonia

Smith in this case.  In 2008, Bagdasarian posted on a Yahoo message board in

relation to the then campaigning presidential candidate, Senator Barack Obama:

> **Re: Obama fk the nig*ar, he will have a 50 cal in the head soon.**

*See id*. at 1115.  Bagdasarian later wrote on the same message board:

> **shoot the ni* country fkd for another 4 years +, what ni* has
> done ANYTHING right ? ? ? ? long term ? ? ? ? never in history,
> except sambos**

*See id*.

The United States Secret Service interviewed Bagdasarian, who admitted to posting

these statements from his home computer.  Executing a search warrant, the agents

found six firearms in Bagdasarian's home, including a *.50 caliber rifle*. Note that

Bagdasarian had threatened that a **".50 cal"** would **"be in [Obama's] head soon."**

*See id.* Searching the hard drive of his computer, the agents found more of

Bagdasarian's inflammatory and deprecatory verbiage against Obama, as well as,

videos that appeared to be of him blowing up a propane tank and other items, with

titles that seemed to allude to such action being in preparation.  Bagdasarian was

charged with "making threats to inflict bodily harm on a major candidate for office

of President."  *See* 18 USC 879(a)(3).  Bagdasarian agreed to be tried by the district

judge in his case (waiving his right to a jury), and the judge found him guilty.

On appeal, the Ninth Circuit carefully considered the federal statute under

which Bagdasarian was convicted, § 879(a)(3).  The appellate court, as instructed by

*Virginia v. Black*, analyzed this statute in accord with the dictates of the First

Amendment.  *See Bagdasarian* at 1116.  The appellate court emphasized that the

4

Government cannot criminalize constitutionally protected speech, and the court must distinguish between mere threatening speech (which is protected by the First Amendment and thus immune to criminal liability), and "true threats." *See id.* Consistent with *Black,* the *Bagdasarian* court concluded that a defendant can only be punished for a threatening expression, *if* the "speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *See id.* (citing *Black*, at 359). In Bagdasarian's case, it was the first major African American candidate for President of the United States. But the reasoning of the court should reasonably lead to the same conclusion regarding alleged threats against private individuals, as well, such as those who are alleged to have received threats from Latonia Smith in this case. **As the court in *Bagdasarian* reasoned:**

> **In order to affirm a conviction under any threat statute that criminalizes pure speech, we must find sufficient evidence that the speech at issue constitutes a "true threat," as defined in *Black*. Because the true threat requirement is imposed by the Constitution, the subjective test set forth in *Black* must be read into all threat statutes that criminalize pure speech."**

*Bagdasarian,* at 1117.

What is "the subjective test?" It is looking at the words to see if the speaker/writer was using specific language to threaten. That is the way that the court can surmise if the defendant subjectively *intended* to threaten. To be guilty of threatening someone, under the federal statutes (whether as against an especially protected person, such as a candidate for major elected office, or as against a private

5

individual), there must be both an objective threat and a subjective threat.  See

Bagdasarian at 1118.  As *Bagdasarian* says, "It is therefore not sufficient that

<u>objective </u>observers would reasonably perceive such speech as a threat of injury or

death."  *See id*. at 1116 (emphasis added).  Instead, the person making the threat

has to be seen, by view of the language used, to be subjectively making a threat of

injury or death.  *See Bagdasrian,* at 1118.

However, in *Bagdasarian*, the appellate court did not seem to even have to go

so far as evaluating whether the words used by Bagdasarian would indicate a

*subjective* intent to threaten.  That is because, beginning with the *objective* test, the

*Bagdasarian* court held that Bagdasrian's words were <u>not</u> a true threat.  The

objective standard is "whether a reasonable person who heard the statement would

have interpreted it as a threat."  *See id*. at 1119.  According to *Bagdasarian*, the

defendant's comments, as vile as they were, did not constitute a threat in the

ordinary meaning of the word.  *See id*.  Rather, Bagdasarian's statement was a

"prediction" that Obama "**will have a 50 cal in the head soon.**"  Even considering

the "surrounding circumstances" (i.e., Bagdasarian's apparently violent personality

and his possession of multiple firearms), the court stated: "It conveys no explicit or

implicit threat on the part of Bagdasarian that he himself will kill or injure

Obama."  *See id*.  Elaborating further:

> Nor does the second statement impart a threat. **'[S]hoot the nig' is**
> **instead an imperative intended to encourage others to take**
> **violent action, if not simply an expression of rage or**
> **frustration**.  The threat statute, however, does not criminalize
> predictions or exhortations to others to injure or kill the President.  It

is difficult to see how a rational trier of fact could reasonably have found that either statement, on its face or taken in context, expresses a threat against Obama by Bagdasarian.

*See id.* at 1119-1120 (Emphasis added).

The court acknowledged that Bagdasarian's statements were "alarming and dangerous." *See id.* at 1119-1120.  And the court revealed that it found it "troubling" that Bagdasarian's statements might encourage others to take action against the campaigning senator, soon-to-be United States president. However, there was "nevertheless insufficient evidence that either statement constituted a threat or would be construed by a reasonable person as a genuine threat by Bagdasarian against Obama."  *Id.* at 1120 (Emphasis added).  "[T]he meaning of the words is absolutely plain.  They do not constitute a threat and do not fall within the offense punished by the statute." *Id.*  at 1120.  **That is the same situation presented by the letters allegedly mailed by Latonia Smith in this case (as will be elaborated infra).**

Moreover, the *Bagdasarian* court held that the speaker had to have intended to seriously commit an act of unlawful violence in making the statements, i.e., intended subjectively to threaten:

> As we previously discussed…the prediction that Obama "will have a 50 cal in the head soon" **is not a threat on its face** because it does not convey the notion that Bagdasarian *himself* had plans to fulfill the prediction that Obama would be killed, either now or in the future. Neither does the "shoot the nig" statement reflect the defendant's intent to threaten that *he himself* will kill or injure Obama.  Rather, "shoot the nig," expresses the imperative that some unknown third party should take violent action.  The statement makes no reference to Bagdasarian himself *and so, like the first statement, cannot reasonably be taken to express his intent to shoot Obama.*

7

*Id.* at 1122.

However relevant the court found, for context, that Bagdasarian had a firearm at home (a .50 cal, to be exact), and the fact that he made these statements near Election Day, did not suffice to establish that he subjectively intended to threaten or harm Obama himself. *See id.* at 1123. Nor that an objective listener should so hold. Hence, the appellate court reversed Bagdasarian's conviction. The words were not "true threats," and are therefore "protected speech under the First Amendment." *See id.* at 1124.

2. <u>The letters allegedly mailed by Latonia Smith do not constitute "true threats."</u>

Just as in *Bagdasarian*, this court must objectively evaluate whether or not the letters that make up the Government's case against Ms. Smith are criminally actionable—that is, whether or not they constitute "true threats." If they are not objectively true threats, a legal standard that should remain outside the purview of the jury, then the case against her must be dismissed, even now. Ms. Smith's alleged writings, her alleged letters, must objectively demonstrate, that *she herself threatened to* take some action to injure or harm the addressee. Looking more closely at the verbiage in the subject letters on the eve of trial, it is evident that is simply not the case here.

The Government has charged Ms. Smith with five counts of mailing threatening communications, for allegedly sending three different communications to five individuals, which are attached as Exhibits 2-4. *See* Indictment, ECF No. 19,

8

at Exhibit 1.   They will be taken one at a time.  Ms. Smith does not herein admit

that she either wrote nor that she mailed these communications.  Rather, she

contends herein that even if she did, they would not constitute true threats, and as

a matter of law, are not criminal; therefore the matter must not go to a jury, but

instead, be dismissed.

### A.    Letter in Counts 3, 4, and 5:  August 11, 2018

The letter in Counts 3, 4, and 5 is included herein as Exhibit 2 (Bates

stamped 000077).  It reads in pertinent part:

> Your throat will be slit you will be recorded as the blood spills from your neck
> and just as you gasp to take your final undeserving breath three bullets will
> be placed right through your skull You will be hunted to the ends of the earth
> young or old You and every blood relative you leave behind you and every
> friend you have you and every person who speaks to you you and every
> person who helps you you and every single one of you will suffer and will be
> slaughtered like less than animals When you least expect it you will beg for
> your lives and your childrens [sic] lives. everyone [sic] around you will die a
> painful death  The marks of your dried tears will be left with your bloodied
> brain splattered across the floor your body will be fed to the animals and the
> insects who sit above you…

*See* Exhibit 2 (Bates stamped 000077); ECF No. 19, at pages 1-2.

Nothing in this letter thus far involves a true threat by Latonia Smith or the letter

writer that *they will "slit the throat"* of the listener or addressee.  Rather, this letter,

however mean-spirited and hostile, speaks predictively of bad things that will happen

to the addressee:  "Your throat will be slit…you will be hunted…you will suffer and

will be slaughtered."  This is not an indication that *Latonia Smith is threatening that*

*she will carry out these actions*.  This is not an indication, therefore, that Ms. Smith

(assuming *arguendo* that it *was* she), has demonstrated an objectively reasonable (or

9

subjectively reasonable) intention to threaten another. Just saying harsh words, or expressing a wish that a person die a violent death, expressed in graphic and disturbing language, is not against the law. It is only a crime if the letter writer expressed that *she or he or they* were intending to bring it to pass. This is just like Bagdasarian stating that a ".50 cal" would end Obama's life "soon" on the eve of an election. That is protected speech under the First Amendment. And so is the written speech contained in Count One.

The rest of the letter is no different. It speaks of there being "no mercy" for the recipient of the letter. But this is ambiguous, and does not refer to any specific threat on the part of the letter writer to bring about this. Again, that is not sufficient to state a true threat. The writer of this letter imprecates (also protected under the First Amendment) the addressee to "Petition for mercy." *See* Exhibit 2, at *id.* And that "horses have been dispatched" and "jihad has been declared." But this, too, is a vague wish or prediction that something will be done to cause harm to the addressee, not specifically that Ms. Smith would. This is speech that is not criminal, and in fact, however unsettling, protected in a criminal case by the First Amendment. (This is not to say that sending such a letter might implicate civil remedies, such as intentional infliction of emotional distress or invasion of privacy, or defamation, for example. Just that such words do not rise to the level of a crime).

Indeed, the distinctly Biblical and poetical nature of the speech attenuates even the slight idea that these are true threats—not only are they not attributed to the writer, i.e., the writer does <u>not</u> say, "I will make you petition for mercy." But the

majority of the words in the second part of the letter itself show that the verbiage is a paraphrase of very well-known and established words of literature:

> "And I beheld, and lo a black horse; and he that sat on him had a pair of balances in his hand…And I looked, and behold a pale horse: and his name that sat on him was Death, and Hell followed with him."

<u>The Holy Bible</u> (King James Version), Revelation 6:8.

This is not properly seen as a threat, but rather an invocation to Scripture, and perhaps to a Higher Being, or God, to bring this eventuality about to the addressee, not an intentional threat that Ms. Smith (or whoever sent the letter) to do so. The language is eschatological and moralistic throughout this letter, promising that the person who is being addressed should be assured that they will face Heavenly vengence. That is all that the letter essentially states throughout.

The statement that "they" will come like "thieves in the night" is directly invoking Jesus' warning that He will return to Earth, bringing retribution, like a "thief in the night." *See, e.g.*, <u>The Holy Bible</u>, Luke 17:34-35. And, Scripture (from the same source) goes further to say that "the day of the Lord" will come suddenly like "labor pains upon a pregnant woman." *See* 1 Thessalonians 5:2-4. "And they shall not escape." *See id.* (This first exhibited letter talks about "destruction [coming] suddenly like labor pains.") The Old Testament of the Bible talks, just as does the exhibited letter of, "suns becoming black" or like "darkness." *See* Joel 2:31. The subject letter states that this recipient will "stand before the white throne," also, a direct reference to sacred Scripture. *See* Revelation 20:11-15. (The "white throne" is

believed to refer to God's judgment of a soul).[1]  The "moon becoming like blood," also

referred to in this first letter, hails from Scripture, again as a moral judgment, not

reasonably as a direct threat.  *See* Revelation 6:11-13; Joel 2:31.  The "lake of fire" is

destined is widely understood to be an inferno for those who fail in moral goodness—

again, not violence by a particular, human individual.[2]

    All of these references, which hail directly from Scripture, everything from the

"pale horse," the "pale rider" who is named "Death," the black horse, the labor pains,

the thief in the night, to the black suns, and the blood moon, all obviously and

evidently make a <u>moral</u> condemnation, not an actual, or true threat.  Throughout this

first letter, the writer refers to a vague "they:" "[T]hey will hunt you until they rid

you of your place here," and "the gods will reward those who bring you to your end

through pain and suffering."  The end of the letter has the Arabic script for "God is

great" (or *Allahu Akbar*).  And as a final flourish, a familiar quotation from the teen

---

[1] *See, e.g.,* United States Conference of Catholic Bishops, stating that these words of Revelation are a "description of the final judgment, after the reign of Christ where the dead are raised and judged." https//: bible.usccb.org/bible/revelation/20 (last visited April 12, 2021).

[2] American rock band Nirvana riffs on this with its song, "Lake of Fire" (1993), with the following lyrics:

    Where do bad folks go when they die?
    They don't go to Heaven where the angels fly
    They go to the lake of fire and fry
    See 'em again 'til the fourth of July…

The Book of Mormon describes a "lake of fire" in Jacob 6:10 which reads, "Ye must go away into that lake of fire and brimstone, whose flames are unquenchable, and whose smoke ascendeth up forever and ever, which lake of fire and brimstone is endless torment."

dystopic film and novel, *The Hunger Games* by popular novelist, Suzanne Collins, appears: "May the odds be ever in your favor." How the letter puts it: "May the odds of a different death be ever in your favor." *See* Exhibit 2. But this statement, *if anything*, militates against a threat—it expresses a hope that the addressee will have a *different* death, one other than pain and suffering, if the "odds" be in their favor. The face of the envelope that allegedly contained this letter also contained the following imprecation:

> thee shall kicketh the bucket first aft'r thou art curs'd
> the wrath of the gods art upon thee
> behold ov'r thy shouldst'r f'r the rest of thy days
> the black and whey-face h'rse knoweth not timeth[3]

None of these apocalyptic expressions is specific enough to constitute a threat of the letter-writer to be the cause of the recipient's meeting his or her final end, or doing the actions. It is unclear who "they" are, except perhaps in a vague sense of justice, karmic and spiritual. That does not a criminal case make. Ms. Smith should not be convicted on what is at most a vague spiritual "they" who will accomplish this harm and destruction on the addressee—not the writer of the letter. Expressing an opinion about another person's moral failings and final condemnation is not a crime, even if such opinion is sent to that person.

---

[3] This appears in Bates stamped 000076, which is not being produced at the moment because it also contains a name and address which counsel does not want to have to place under seal.

It is not just *Black,* and *Bagdasarian,* that compel this conclusion, but but a later Ninth Circuit case, as well.  *See United States v. Havelock*, 664 F.3d 1284 (9th Cir. 2012).  The *Havelock* court, reversing the conviction of the defendant who sent threatening letters to different people and institutions, came to the conclusion that ostensible threats that did not specifically reference the writer accomplishing some aim to injure or harm could not get past the First Amendment:

> A few of Havelock's statements appeared to be addressed to whomever read them: e.g., **"I will slay your children."** But to hold that such a statement suffices is to read "addressed to any other person" out of §876(c).  And, indeed, it is impossible to determine (and is highly unlikely) that Havelock, in the quoted phrase, was referring to any particular person whose children he was going to slay."

*See id.* at 1097 (Emphasis added).

Similarly, there is no true threat here.  It is unclear what the writer of this letter means by stating that the recipient will "beg for their lives" [plural] and their "children's lives" who or what is intended.  *See* Exhibit 2.  Is it that they (whoever that is) will "beg" a deity or some other actor who may bring some kind of vengeance?  This will not suffice for a criminal conviction.

**B.   Letter in Count 2:  April 25, 2019**

The letter in Count 2 is attached as Exhibit 4 (Bates stamped 000091).  The letter was allegedly sent to SB.  The letter ends with the words, "Behold I will bring evil upon them which they shall not be able to escape and though they shall cry I will not hearken unto them."  *See* Exhibit 4.  These words in the letter are from Scripture:

> "Therefore thus saith the Lord, Behold, I will bring evil upon them, which they shall not be able to escape; and though they shall cry unto me, I will not hearken unto them."

*See* The Holy Bible (KJV), Jeremiah 11:11.

Perhaps equally importantly (in this context), this exact scripture verse was quoted in the popular cultural reference 2019 movie, *US*, an African American film produced by Jordan Peele.[4]  Though this may have seen threatening to SB, it is not a true threat, to make a moral assertion that she will be punished by God.  It is not a nice thing to say, but it does not forebode of a specific threat to injure or harm.

These words in the subject letter are also taken from Scripture:

The people have suffered violence and the violent take it by force.

"The Kingdom of Heaven suffers violence, and the violent take it by force."

*See* Matthew 11:12.

Indeed, even the most ominous parts of this letter—that SB has been added to the "hit list," or that she "hopefully" will be "around for many years to enjoy" her wedding, are not true threats in the legal sense.  They do not state that Ms. Smith (or the sender of the letter) will be the one to do something about making Ms. "SB" not be around, or that it is Ms. Smith's hit list.  Instead, the letter seems to imply

---

[4] *See* Leah Greenblatt, "That Bible Verse in Jordan Peele's *US:*  What does it mean?" (*Entertainment Weekly*, March 27, 2019).

that these things will come about inevitably in a new order, where "no one is walking away unscathed from the very top to the very bottom," because "This is America." *See* Exhibit 4. This is not specific enough to constitute a true threat.

In *Barcley*, a disgruntled prison litigant sent a letter to his attorney. In the letter, the client noted his dissatisfaction with counsel's services in perfecting an appeal, and stated that "as soon as I can get this case situated around in the position I want you are the first S.O.B. that will go." *See United States v. Barcley*, 452 F.2d 930, 932 (8th Cir. 1971). The Eighth Circuit held that because the letter was equally susceptible of both a threatening and non-threatening interpretation, the government must present additional evidence to remove the ambiguity before the question could go to the jury. *See id.* at 933. Certainly, it must have sounded threatening to the defendant's lawyer to hear that he would be the "first S.O.B. that will go." But again, that subjective feeling on the part of the victim does not a true threat make. And such words do not rise to the level of a criminal offense, particularly bearing in mind the First Amendment.

Just as in *Bagdasarian*, these statements do not constitute a threat in the ordinary meaning of the word. The statements are a warning or a prediction that the addressee, presumably Ms. "SB", will suffer some "evil," and be on a "hit list." But again, just Bagdasarian's threats were that Obama "will have a 50 cal in the head soon"—but the appellate court held that it did not necessarily imply that *he* would do the honors—likewise, this "hit list" does not imply that Ms. Smith would

do the honors, either.  "It conveys no explicit or implicit threat on the part of [Ms.

Smith] that [s]he [herself] will kill or injure [Ms. SB]."  *See id.*

## C.    Letter in Count 1:  August 11, 2018

The letter in Count 1 is attached as Exhibit 3 (Bates stamped 000087).  This

letter, more than either of the two previously discussed, presents a poem, and a

moral opinion, an imprecation, and perhaps a curse, but nothing like a true threat

such that criminal liability should attach.  The poem will be produced in full; the

first part is presented here first, and in the exact stanzas as it appears:


> You have lived sevenn [sic] months pass [sic] the new year
> Yoouu [sic] do not deserve the air you breathe
> We have been kind
> At times Forgivivng [sic]
> Evil and greed is at the heart of us all
> But those with power should reevaluate their actions
> Seek penance fix your ways and actions or you will all die
> ALL

*See* Exhibit 3.

Nothing in this letter thus far contains a criminal threat.  The writer expresses

consternation and judgment about the fact that the recipient does not deserve to

live, that "we" (whoever that may be) have tried to bring about a change in the

addressee's conduct by being kind and forgiving, to no avail.  The writer concedes

that he or she also has flaws—"evil and greed is at the heart of us all."  And the

writer urges the addressee, apparently one "with power," to change his or her

17

behavior, to "fix [their] ways" *or* "you will all" (the plural is unclear to whom it is

referring), will die.  That is stated as a fact—not as a threat.

The second part of the poem/letter goes in the same way (redacted for

expletives):

> Starting with the head
> The very very top first
> Mark these words
> We have entered a new era
> We rule
> No one is untouchable
> No one
> Racist Motherf*ckers
> Keep f*cking with us
> ALL WILL REGRET
> REAL THREAT
> FIX IT

*See id.*

The only part of this second part of the writing that remotely even sounds

threatening are the words that it is a "real threat."  But someone saying that words

are a "real threat," does not automatically turn them into a true threat, pursuant to

federal law for § 876(c).  The entire verse referred to as a "real threat," is simply

that some unspecified persons have "entered a new era," where they "rule," and that

"no one is untouchable."  That seems to be stated as a true fact.  The writer calls the

addressee "racist" and other bad names, and says that if the person continues to

harass or cause problems, that they will "regret" it.  Regret what, exactly? What will

be outcome of this regret--? A lawsuit? Bad publicity? Some other harm? And more

importantly, for the purpose of § 876(c), who will make them regret it? For there to

18

be a true threat, the speaker or writer of the supposed threat must be the one to state an intention to harm or injure.

Here, the writer refers vaguely to some force that will make "all regret." There is no cause and effect relationship between the words, "Keep f*cking with us" and the next line, "All will regret."  The next line promising that it is a "real threat" is not again, sufficient to turn this into anything other than an ambiguous and vague imprecation or prediction—not a true threat.  And "fix it" does not constitute a threatening phrase in and of itself, nor in combination with the words that go before it, because it is unclear who or what will carry out a threat, and of what type (legal or illegal).

Finally, the letter poem ends with:

> Deadline Monday December 31, 2018: YOU BETTER FIX IT
> Pass along

*See id.*

This letter particularly ends with words that do not appear to support a true threat. There is no statement as to what happens on December 31, 2018.  (And indeed the next letter appears to come "seven days past the new year," indicating that the writer is not the one who will carry out any threat of death—but instead is waiting and hoping on some third party to do so.)  The letter itself is signed, as addressor, from the Democratic National Convention (DNC), appearing to be some kind of symbolic statement about the political viewpoint that the writer believes the addressee holds, or else that the poem letter reflects the views or philosophy of the DNC.  Either way, it is not a true threat.

At most, just as in Bagdasarian's "shoot the nig," this language appears to act as an imperative intended to encourage others to take violent action, if not simply an expression of rage or frustration.  As stated in *Bagdasarian*, albeit about an analogous statute, the threat statute, however, does not criminalize predictions or exhortations to others to injure or kill.  It is difficult to see how a rational trier of fact can reasonably hold that this letter, on its face or even taken in context, expresses a true threat to kill, harm, or injure Ms. SR, and/or whomever else it was allegedly mailed to.  Yes, the words are "alarming and dangerous," perhaps.  *See Bagdasarian, id.* at 1119-1120.  And the recipient and the Court may find it more than "troubling."  But for criminal liability to attach, there must be something more than that.  A genuine threat must be specific, and this is not.  "When our law punishes words," we must "not distort or embellish their plain meaning so that the law may reach them." *Id.*  at 1120.

Here, the meaning of the words is absolutely plain.  Indeed, no one is untouchable, there are such things as racists, and it is possible that "a real threat" exists that they will eventually regret such attitudes or conduct.  That is not a criminal statement.  Even when sent to a particular person.  Again, nothing here suggests that the letter writer, or Latonia Smith, herself, had plans to fulfill the prediction that the persons who need to change their ways "will regret it."  The statement makes no reference to Latonia Smith her*self* and so, like Bagdasarian's statements, cannot reasonably be taken to express an intent to harm or injure Ms. SR.  *See id.* at 1122.

Ms. Smith's words (if they were even hers) were not "true threats," and are therefore "protected speech under the First Amendment." *See id.* at 1124. "In many ways, § 876(c) is anachronistic. It was enacted at a time when deposit of 'mail matter' for delivery by the Postal Service was the primary means of written communication and one's address was the place where a person received mail. Today, the Postal Service is in serious decline, and true threats are more likely to e emailed, texted, or posted on the internet." *See Havelock*, 664 F.3d at 1313 (citing *Bagdasarian*, 652 F.3d at 1126-27, where Wardlaw, J. collected instances of online threats and postings that presaged tragic events)). "Havelock's choice to use snail mail, particularly on a Sunday, thirty minutes before the Super Bowl where he [claimed that he] intended to shoot attendees and commit 'suicide by cop,' guaranteed that by the time anyone actually received the communication, the deed would be done—not merely threatened." *See id.* Thus, it could not properly be considered a "true threat," either, however counterintuitive that might sound. However, nonetheless, this circuit has held that such is the law. As *Havelock* mused, "Congress is free to broaden §876 if it wishes; we are not." *See Havelock,* at 1098.

/ / /

/ / /

/ / /

/ / /

In conclusion, considering the foregoing, the indictment against Ms. Smith should be dismissed.

Dated this 12th day of April, 2021.

Respectfully submitted,

LAW OFFICE OF TELIA U. WILLIAMS
/s/ Telia Mary U. Williams, Esq.
Telia Mary U. Williams, Esq.
Nevada Bar No. 9359
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145
*Attorney for Defendant, Latonia Smith*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the following date the foregoing motion was electronically filed with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

Dated: April 12, 2021

/s/ David DaSilva

For the Law Office of Telia U. Williams