CHRISTOPHER CHIOU
Acting United States Attorney
Nevada Bar No. 14853
STEVEN W. MYHRE
Nevada Bar No. 9635
DANIEL CLARKSON
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Steven.Myhre@usdoj.gov
Daniel.Clarkson@usdoj.gov
*Attorneys for the United States*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>           vs.<br><br>LATONIA SMITH,<br><br>                      Defendant. | No. 2:19-cr-00304-RFB-VCF<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (ECF No. 188)** |

This Response is timely filed.

The Motion to Dismiss should be denied because the Court cannot determine whether a "true threat" exists until it has received evidence, including evidence of the context of the threatening communications. The Court determines "true threats" under an objective standard after considering the context of the communications. Context includes *all* the facts and circumstances surrounding the alleged threats, including the relationships and interactions among the sender and receivers of the communications. The Court cannot make this determination through a motion to dismiss, as filed here, because that inquiry is limited to the facts pleaded in the Indictment. While the government submits that the charged

1

communications, on their face, provide sufficient evidence of true threats, the government will also adduce context evidence at trial to meet the objective standard and to prove the defendant's specific intent.

The government previously filed a Motion in Limine in this regard, articulating and seeking admission of its context evidence. Given the government's obligation to provide evidence of the context of the charged communications and defendant's intent when sending them, the Court should permit evidence that relates to the context of the communications. This includes the defendant's use of a Glock replica BB gun to threaten the victim when she arrived uninvited and forcefully entered his residence.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     Facts and Procedural Posture.**

On November 20, 2019, a grand jury in Las Vegas, Nevada, returned a Criminal Indictment against the defendant charging five counts of Mailing Threatening Communications, in violation of Title 18, United States Code, Section 876(c). Each count in the Indictment charges specific threats to injure either the recipient of the communication or another, referencing the date of the alleged communications and the language comprising the threats, as follows:

**Count One**:   yo[u] don't deserve the air you breath … all will die . . . starting with the head . . . REAL THREAT . . . FIX IT . . . Deadline Monday . . . Pass along (referred to hereinafter as the "Real Threat" letter).

**Count Two**:   congratulations you have just been added to the hit list . . . congratulations on your wedding [S.B.] hopefully you'll be around for many years to enjoy it . . . revenge is the sweetest joy and every single one of you will meet it face to

>face no one will be safe . . . will never see it coming it will just be lights out (referred to hereinafter as the "Hit List" letter).

**Counts Three, Four and Five**:

>your throat will be slit you will be recorded as the blood spills from your neck and just and you gasp to take your final underserving breath three bullets will be placed right through your skull . . . when you least expect it you will beg for your lives. Everyone around you will die a painful death (referred to hereinafter as the "Slit Your Throat" letter).

On April 12, 2021, the defendant filed a Motion to Dismiss the Indictment (ECF No. 188), contending that the charged communications are not true threats subject to prosecution. This Response follows. For the reasons set forth below, the Motion should be denied.

**B. Legal Standard**.

Rule Seven of the Federal Rules of Criminal Procedure requires a "plain, concise, and definite written statement of the essential facts constituting the offense charged" in the Indictment. An indictment meets this requirement if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable her to plead double jeopardy. *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009).

On a motion to dismiss, the Court reviews only the facts alleged in the indictment and accepts them as true. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The Court reads the indictment in its entirely, construes it according to common sense, and include facts which are necessarily implied. *United States v. Berger*, 47. F.3d 1080, 1103 (9th Cir. 2007). The Court may not invade the province of the jury and decide by pretrial motion, matters "of the general issue." *United States v. Shortt Accountancy Corp.,* 785 F.2d

1448, 1452 (9th Cir. 1986). "A motion to dismiss the indictment cannot be used as a device for summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).

True threats are prohibited and are not entitled to First Amendment protection. *United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012) (interpreting threats under Section 876(c)) (citations omitted); *United States v. Sutcliffe,* 505 F.3d 944, 953 (9th Cir. 2007) (interpreting threats under Section 875(c)). To prove a true threat, the government must adduce evidence that the sender subjectively intended to threaten. *Keyser,* 704 F.3d at 638 (*citing United States v. Bagdasarian*, 652 F.3d 1113, 117-18 (9th Cir. 2011)); *Sutcliffe,* 505 F.3d at 953 ("a conviction under Section 875(c) requires the specific intent to threaten").  The Supreme Court has defined this *mens rea* requirement as transmitting the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis v. United States*, 575 U.S. 723, 740 (2015). Ultimately, the jury determines this fact. *United States v. Gilbert*, 813 F.2d 1523 (9th Cir. 1987) (interpreting Fair Housing Act banning threat of force to intimidate person based on race and housing practices).

To find sufficient evidence of a true threat, courts apply "an objective standard – whether a reasonable person would foresee that the statement would be interpreted *by those to whom the maker communicates* that statement as a serious expression of intent to harm or assault." *Keyser*, 704 F.3d at 637 (emphasis added) (citations omitted). Under Ninth Circuit law, the Court applies the objective standard "in light of [the] entire factual context [of the communications] to determine whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future." *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1074 (9th Cir. 2002). The entirety of the factual context includes all "the *surrounding*

*events and [the] reaction of the listeners.*" *United States v. Orazco-Santillan,* 903 F.2d 1262, 1265 (9th Cir. 1990) (emphasis added).

**C.    Argument**.

The Court should deny the Motion. The Indictment pleads notice of what the defendant must defend against (violations of Section 876(c)). Because it pleads the dates and specific communications at issue, the Indictment provides sufficient detail to plead double jeopardy. The Court cannot assess true threat on a motion to dismiss under Rule 12, as filed here. This is so because whether a "true threat" exists is a fact to be determined from the evidence presented at trial.

The Court uses the objective standard to determine sufficiency of the evidence for a true threat finding but, ultimately, "true threat" is decided by the jury. Thus, whether the letters contain true threats under the objective standard is properly considered on a Rule 29 Motion for a Judgment of Acquittal either following the taking of evidence or after verdict. But it is not addressed in a Rule 12 motion.

The government will adduce sufficient evidence under the objective standard. It will present evidence of the language of the letters themselves as well as the full context of the letters, including evidence of all the circumstances surrounding the relationships and interactions between the defendant and the alleged victim-recipients of the letters. In this regard, the government has filed a Motion in Limine explicating its context evidence.[1]

---

[1] *See* ECF Nos. 164 (redacted) (corrected image at 166) and 165 (unredacted and under seal) and the government's responses to defendant's Motions in Limine to exclude context evidence. ECF Nos. 201 and 203.

5

### 1. The Indictment Is Sufficiently Pleaded – The Court Makes a True Threat Sufficiency Determination *After* Evidence Has Been Adduced at Trial.

The Motion does *not* contend that the Indictment fails to meet the pleading requirements of Rule Seven. Indeed, it cannot because the Indictment pleads in detail the dates, the recipients, and the threatening language contained in the three letters that are charged as violating Section 876(c). These facts are more than sufficient to provide the defendant notice of the charged offenses and the details necessary to plead double jeopardy, which is all the Court can address on a Rule 12 motion attacking the sufficiency of the Indictment. *See Awad,* 551 F.3d at 935. The Court does not address the sufficiency of the evidence on a motion to dismiss.

Yet, that is precisely what defendant asks this Court to do. She seeks dismissal based on her claim that the letters do not contain true threats, citing the objective standard. The Court, however, does not apply the objective standard on a motion to dismiss; it must first take and review evidence.

At the outset, defendant's claims that there are no true threats are based on supposed facts for which no evidence has been adduced. For example, among defendant's many claims, she asserts that the Slit Your Throat letter does not express an intent to kill anyone. Mot. at 9-10. She also claims that the letter is vague and ambiguous, and that is offers only metaphors or references to the Bible, spiritual symbols, poetry, literature or contemporary cultural icons and personalities. *Id.* at 10-14. She makes similar arguments regarding the Real Threat and Hit List letters. *Id*. at 14-21.

None of these claims, however, is based on record evidence or an offer of proof. Whatever her attempts to characterize or mischaracterize the letters, none of the letters can be assessed under the objective standard solely on argument; none of the letters is in evidence and the government has been afforded no opportunity to present context evidence.

The government has found no Ninth Circuit case applying the objective standard on the pleadings. Cases addressing this issue, including *Bagadasarian* (cited by defendant),[2] apply this standard *after* trial to determine the sufficiency of true threat evidence. *See Bagdasarian* (post-trial review using objective standard, finding insufficient evidence of true threat for offensive postings on a Yahoo message board about then-Presidential candidate Obama); *accord Planned Parenthood* (post-trial review using objective standard, finding sufficient evidence of true threat for wanted posters depicting doctors who performed abortions even though the posters contained no threatening language); *Keyser* (post-trial review using objective standard, finding sufficient evidence of true threat for mailing of white sugar packet labeled as Anthrax); *Orazco-Santillan* (post-conviction review using objective standard, finding sufficient evidence of true threat based on statement "you'll pay for this" made to federal officer).

As discussed further below, the government will adduce substantial context evidence at trial to satisfy the objective standard. To the extent the defendant wishes to challenge the sufficiency of that evidence, she may properly do so on a Rule 29 Motion for Judgment of Acquittal either after evidence has been presented or after verdict, or both.[3] This Motion should therefore be denied.

---

[2] Defendant also cites to other cases in support of her arguments but none of them applies the objective standard. *See Barcley* (reviewing evidence on motion for judgment of acquittal on Section 876 charge); *Havelock* (post-trial review but not addressing true threat); *Mabie v. Bell*, (post-trial review of evidence applying *Elonis* and finding evidence sufficient).

[3] Under Rule 29, the standard for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Inzunza,* 638 F.3d 1006, 1013 (9th Cir .2009) (emphasis in original) (internal quotation marks omitted) (citing *Jackson v. Virginia,* 443 U.S. 307, 318 (1979) (explaining that "the critical inquiry" is "whether the record **evidence** could reasonably support a finding of guilt beyond a reasonable doubt")). The Court would review the communications for true threat sufficiency under the objective standard set forth herein.

### 2. The Government Will Adduce Context Evidence Sufficient to Show the Letters Comprise True Threats Under the Objective Standard.

As is clear from the discussion above, true threats are not determined from words alone but from the entirety of the context of the communication, including the history of the relationships and interactions between the communicator and the recipients. As an initial matter, the government submits that the charged communications are clearly threatening on their face, given their graphic statements of violence, harm, and death to the recipients, each of whom were specifically addressed by name on the corresponding envelopes. Any recipient reading the words "all will die" and "real threat" (Real Threat letter), "you've been added to the hit list" and "you'll never see it coming" (Hit List letter), or "your throat will be slit" and "three bullets will be placed right through your skull" (Slit Your Throat letter) would reasonably interpret those words as conveying a threat of harm to the recipient. Defendant's argument that a reasonable person would simply disregard this threatening language due to the sender's references to the Bible or use of the passive voice defies belief.

Regardless, even language that may appear vague or conditional on its face may still contain true threats – express or implied – based on the context of the communications as informed by the relationship of the parties. The government intends to present evidence of the context for these communications, including:[4]

- communications between defendant and S.R. demonstrating escalating hostility toward S.R., which led to S.R. obtaining a Temporary Protection Order ("TPO") against the defendant;

- evidence of the April 2019 physical confrontation between S.P. and the defendant, where the defendant threated to "punch [S.P.] in the face";

---

[4] See ECF Nos. 164/166; 165.

- evidence of defendant's communication, during the time of the transmission of the letters, of homicidal thoughts and her intent to seek revenge against those who had aggrieved her mother;
- the antecedent TPOs against the defendant obtained by S.R., S.P., W.B., and S.B.;
- warnings issued by Postal Inspectors to defendant prior to receipt of the letters charged in Counts Three, Four, and Five that she cease and desist writing threatening letters;
- evidence of the defendant's October 31, 2019 confrontation and threatening of W.B. at his residence with a Glock replica BB gun.

When the charged letters are read in the context of these events, the jury (and the Court) will be able to determine that any reasonable person would foresee that they would be interpreted by their recipients as "serious expression[s] of intent to harm or assault." *See Keyser*, 704 F.3d at 637.

### 3. Given the Necessity for the Government to Prove Defendant's Intent and to Show the Full Context of the Threatening Letters, the Government Should be Permitted to Introduce Evidence of the Glock replica BB Gun and Defendant's Threat to S.P.

During a hearing on April 14, 2021, the Court indicated that it would exclude evidence that defendant used a Glock .45 replica BB gun when she confronted W.B. at his residence on October 31, 2019, but that it would revisit that ruling after reviewing the briefing regarding the Motion to Dismiss.[5] In light of the legal principles described above – *i.e.*, that the government must prove defendant's specific intent when she mailed the charged letter and present context evidence for those threats – the Court should permit evidence of the Glock BB gun.[6]

---

[5] The government will not repeat its arguments for admissibility from the Motion in Limine (ECF Nos. 164/166 and 165) and its Response to Defendant's Motion to Exclude (ECF No. 203). It nevertheless adopts and incorporates them here.

[6] This evidence includes the physical Glock .45 replica BB gun that was recovered from defendant's bedroom during a court-authorized search of the defendant's mother's residence the day after the confrontation. The government also intends to offer W.B.'s testimony about the

9

Notably, defendant claims in her Motion that the words in the Slit Your Throat and Hit List letters are vague, predictive, and contain merely metaphorical references to the Bible and cultural symbols. Given this argument, the evidence of the Glock BB gun is particularly probative of both defendant's subjective intent when she sent the charged threats and whether the words contained in the threats constitute "true threats." Moreover, as explained in its previous pleadings, the evidence of the confrontation, including the use of the Glock BB gun, shows the escalation of defendant's hostilities toward W.B., as well as the other victims. It is also offered to show defendant's intent to follow through with the violence threatened in the Slit Your Throat and Hit List letters.

The Ninth Circuit's decision in *United States v. Sutcliffe* is directly on point and clearly illustrates the probative value and admissibility of the BB gun. 505 F.3d 944, 958-59 (9th Cir. 2007). In *Sutcliffe*, the defendant was charged with three violations of Section 875(c) based on statements posted on an internet website which, among other things, included the words: "I will send you back to hell where you came from;" "If I ever see you near my family again, and I know how to stalk you too, I will kill you;" and "Keep your dogs at bay . . . I'm now armed."[7] At trial, over defendant's objection, the trial court admitted evidence that the defendant possessed a rifle, bayonet, and ammunition during the time that he transmitted the threat. The

---

confrontation in addition to the physical weapon. The government anticipates that W.B. will testify that the weapon recovered from the search looks the same as the one he observed in his apartment on October 31, 2019.

[7] Section 875(c) – the statute charged in *Sutcliffe* – employs nearly identical language to Section 876(c) – the statute charged here. Both prohibit sending any communication containing "any threat to injure the person of another." The only difference is the method of transmission; Section 875 relates to interstate communications while Section 876 applies to communications through the mail.

trial court also instructed the jury that the evidence was limited to proving the defendant's specific intent to threaten. *Sutcliffe,* 504 F.3d at 958.

On appeal, the Ninth Circuit found no abuse of discretion in admitting this evidence. In addition, the appellate court specifically agreed with the trial court's rationale for admitting the evidence. The court found that evidence of these weapons "tended to prove that Defendant had the requisite specific intent to threaten." *Id.* at 959; *see also id.* (affirming government's use of the evidence to "demonstrate that [the defendant] actually intended to threaten violence and was not innocently talking about being armed with information or about stabbing and killing in some metaphorical sense.").

Evidence of the Glock .45 replica BB gun used here is even more probative than the weapons at issue in *Sutcliffe*. In *Sutcliffe*, the defendant merely *possessed* a rifle. Here, defendant actually *used* the gun to threaten one of the alleged victims. Therefore, the BB gun is directly relevant toward defendant's intent when she sent the charged threats and her anger and hostility toward the victims, particularly W.B. In addition, it will assist the jury in determining whether the words of the threats can reasonably be interpreted as conveying an intent to do harm. Absent evidence of the BB gun, defendant's unannounced arrival at W.B.'s residence could potentially be interpreted as a cordial visit or similar non-hostile act, depriving the jury of understanding the context of defendant's actions.

Even in *Bagdasarian*, where the court found the evidence of true threat insufficient, it nonetheless *considered*, and found relevant to the issue of intent, evidence that the defendant possessed a .50 caliber gun like the one mentioned in the Yahoo message board postings at issue. *Bagdasarian*, 652 F.2d at 1123. There, the communications at issue were posted on the internet, addressed to no particular recipient, and there was no relationship between the defendant and the person to whom the communication was directed – then-Presidential

11

candidate Obama. Yet, the *Bagdasarian* court considered possession of the .50 caliber gun probative of the defendant's intent, albeit insufficient to establish it under the objective standard.

Here, the connection between the defendant and W.B. is much more direct and substantial than the connection in *Bagdasarian*. The Hit List letter was addressed directly to W.B., was delivered to W.B., and arose from the litigation involving W.B. and the defendant. Under the circumstances of their relationship, defendant's use of the gun on W.B. is directly probative of the defendant's intent behind the letters.

The BB gun evidence further advances proof that the defendant was the author of the letters (*i.e.*, identity) because the letters threaten a "face to face" meeting, being added to a "hit list," and being shot in the head. There is a clear correlation between these words and defendant unexpectedly showing up with a gun to W.B.'s apartment at night, forcing her way in, and pointing a gun at him after he fell to the floor. It makes little if any difference that the defendant did not discharge the gun or that it was a BB gun. W.B. knew none of that when the defendant forced her way into his apartment. Moreover, defendant's uninvited arrival at W.B.'s apartment with a weapon, particularly one specifically designed to look identical to a Glock handgun, is significant evidence of her animus toward W.B. and, consequently, her identity as the author of the charged threats.

At the April 14, 2021, the Court also stated that it would exclude video and audio recordings of the confrontation between the defendant and S.P. after an April 2019 hearing. As the Court recalls, the government intends to offer proof that this confrontation occurred after a hearing in the civil litigation in which defendant was involved. This event is highly probative of the defendant's hostility toward S.P., her identity as the sender of the charged threats, and her intent when she sent those threats. The April 2019 confrontation caused S.P. such concern that

she sought a TPO against the defendant. In addition, about one week after the confrontation, S.P.'s associate on the case and his legal assistant (W.B. and S.B.) received the Hit List letter charged in Count Two. Civil litigation involving the defendant and her mother continued to escalate thereafter. In September 2019, S.P. received the Slit Your Throat letter.

In its ruling, the Court indicated that the government could present S.P.'s testimony about the April 2019 confrontation but not evidence of the sounds and images of the confrontation contained in the recordings the government would offer at trial. The video and audio evidence, however, is directly probative of the context of both the Hit List and Slit Your Throat letters because it shows the relationship between S.P. and the defendant. To understand the context of the letters, the jury, and the Court, should be allowed to see and hear the same images and sounds that S.P. saw and heard to determine whether someone in S.P.'s position could reasonably interpret the words in the Slit Your Throat letter as conveying an intent to threaten harm. The audio and video evidence will show the body language and the tone and tenor of the confrontation that S.P. experienced so the jury can properly assess the relationship between S.P. and the defendant. Without this evidence, the jury will be left only with testimony that does not tell the whole story and is less precise than the images and sounds that S.P. experienced. Because the jury must assess the relationship between S.P. and the defendant to understand the context of the letters, it should do so on the best evidence available. Accordingly, the video and audio evidence should be admitted.

The government has the burden to prove guilt beyond reasonable doubt at trial. It must be allowed to present its context evidence to meet its burden of proof in addition to meeting the objective standard of true threat on a Rule 29 motion. With this evidence, the government will meet its burden of proof at trial and its burden to establish true threats under the objective standard. The Motion to Dismiss should be denied.

D. **Conclusion.**

**WHEREFORE**, for all the foregoing reasons, the government respectfully requests that the Court deny the defendant's Motion and, concurrently, grant its Motions in Limine with respect to its context evidence.

**DATED** this 19th day of April, 2021.

Respectfully submitted,

CHRISTOPHER CHIOU
Acting United States Attorney

/s/ Daniel Clarkson
/s/ Steven Myhre

_____

STEVEN W. MYHRE
DANIEL CLARKSON
Assistant United States Attorneys
*Attorneys for the United States*