Ryan T. Okabe CSB#215964
Law Offices of Okabe and Haushalter
1230 Rosecrans Ave, Suite 300
Manhattan Beach, Ca. 90266
(310) 543-7708 Email: ryan@southbaylawyer.com

Mark J. Haushalter CSB##208935
Law Offices of Okabe and Haushalter
1230 Rosecrans Ave, Suite 300
Manhattan Beach, Ca. 90266
(310) 543-7708 Email: mark@southbaylawyer.com

Brian A. Newman
Law Offices of Okabe and Haushalter
3838 W. Carson Street, Suite 302
Torrance, CA 90503
( 424) 275-4014
Email: jjnewbee.newman@gmail.com

Attorneys for Defendant LATONIA SMITH

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LATONIA SMITH,<br><br>　　　　Defendant | Case No.: 2:19-CR-00304-RFB-VCF-1<br><br>DEFENDANT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE REPORT<br><br>HEARING DATE: DECEMBER 16, 2021 AT 10:00 A.M. |

~ 1 ~

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE
PRESENTENCE REPORT

**TO THE HONORABLE RICHARD F. BOULWARE, II, UNITED STATES DISTRICT JUDGE; THE UNITED STATES ATTORNEY'S OFFICE AND ITS ATTORNEYS OF RECORD, ASSISTANT UNITED STATES ATTORNEYS STEVEN W. MYHRE AND DANIEL CLARKSON; AND UNITED STATES PROBATION OFFICER SUNNY RAY CASCIO:**

Defendant LATONIA SMITH, by and through her counsel of record, Brian A. Newman for Law Offices of Okabe & Haushalter, hereby files Defendant's Sentencing Position and Objections to the Presentence Report in the above-entitled matter.

DATED: November 30, 2021             /s/ *Brian A. Newman*
                                      Brian A. Newman

                                      Attorneys for Defendant,
                                      LATONIA SMITH

# SENTENTCING MEMORANDUM

## I.
## INTRODUCTION

Defendant Latonia Smith appears before this Court for sentencing after being convicted by jury trial on five counts of mailing threatening communications, in violation of 18 U.S.C. §876(c).

Ms. Smith respectfully submits this memorandum to provide information to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a) and in light of *United States v. Booker*, 543 U.S. 220 (2005) (hereinafter "*Booker*").

The U.S. Probation Office calculates a total offense level of 24 and a criminal history category of I, resulting in an advisory guideline sentencing range of 51 to 60 months. The Probation Officer recommends a high-end sentence of 60 months' imprisonment. Ms. Smith respectfully disagrees with the PSR's guideline calculation and the Probation Officer's recommended sentence. After careful analysis and consideration of the relevant sentencing factors in this case, Ms. Smith request that the Court impose a sentence of no more than 21 months' imprisonment.

Ms. Smith believes that such a sentence is reasonable in light of all the facts and circumstances of this case, and that such a sentence achieves the goals of sentencing as set forth in 18 U.S.C. § 3553(a) and relevant case law.

## II.
## PROCEDURAL BACKGROUND

The conduct in this case occurred between December 2017 and October 2019.

On November 1, 2019, Ms. Smith was arrested by the Las Vegas Metropolitan Police Department pursuant to a federal arrest warrant. On this same date, law enforcement officers conducted a search of Ms. Smith's residence.

On November 4, 2019, Ms. Smith was transferred to federal custody for her initial appearance on the following day.

On April 29, 2021, following a 6-day jury trial, Ms. Smith was convicted on five counts of mailing threatening communications, in violation of 18 U.S.C. § 876(c).

Ms. Smith has remained in continuous custody since her arrest on November 1, 2019.

### III.
### THE PRESENTENCE REPORT

The Revised Presentence Report and Addendum to the Presentence Report (hereinafter "PSR") was disclosed on November 22, 2021. The PSR calculates a total offense level of 24 and a criminal history category of I, resulting in an advisory guideline sentencing range of 51 to 60 months.

The total offense level in the PSR is calculated as follows:

1. Base offense level: **12** [USSG §2A6.1(a)(1)]
2. Conduct evidencing an intent to carry out threat: **+6** [USSG § 2A6.1(b)(1)]
3. More than two threats: **+2** [USSG § 2A6.1(b)(2)]
4. Multiple count adjustment: **+4** [USSG §3D1.4]
5. Total Offense Level: **24**

A. **OBJECTIONS TO THE PSR**
   1. **Objection to Paragraphs 43, 50, 57, 63, and 69 - Application of Adjustment for Conduct Evidencing an Intent to Carry Out Threat, Pursuant to USSG § 2A6.1(b)(1)**

Ms. Smith objects to application of the 6-level increase for conduct evidencing an intent to carry out any threat. The PSR applies the increase to Counts 1-5.

As an initial matter, the PSR fails to cite a single fact as the basis for the enhancement.[1] Further, because the increase has a disproportionate effect on the guide-line sentencing range, the applicability of the enhancement must be established by "clear and convincing" evidence.[2] Finally, the record is bereft of any facts that support application of the enhancement, whether by a preponderance of the evidence or the stricter standard of clear and convincing evidence.

There is no evidence that Ms. Smith engaged in conduct prior to the offense or at the time of the offense that showed any intent to carry out any of the threats. Specifically, the threatening communications were made without any prior indication, forewarning, or communication or interaction with any of the victims. As such, there is nothing to link any past conduct by Ms. Smith with the threats contained in the communications. Further, none of the communications themselves contain any information or content suggesting that Ms. Smith intended to carry out the threats. To be sure, the communications contain threatening and ugly language. However, a careful reading of each communication reveals that not one of them shows a specific intent to follow through on the threat, or how, when, or through what means the threats might be accomplished. The only evidence that arguably suggests an intent to carry out a threat is when Ms. Smith went to victim W.B.'s apartment. But even here, the conduct more than six months *after* the communication was received by W.B., and Ms. Smith came armed with a fake gun incapable of inflicting any harm on anyone.

---

[1] See *The Presentence Investigation Report*, Administrative Office of the United States Courts, Office of Probation and Pretrial Services, Publication 107 (Rev. March 2006), III-15, wherein it instructs, "The factual basis for each decision by the officer is supported by presentation of the facts in the preceding sections of Part A. The Offense. With each guideline that is applied, a brief factual basis is presented, which is intended to provide the court with tentative factual findings that may become part of the record. Thus, the short statement of the factual basis is a short synopsis of the previously reported facts."

[2] *U.S. v. Harper*, 177 F.3d 824 (9th Cir. 1999) (holding that a seven-level increase required clear and convincing evidence).

~ 5 ~

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE
PRESENTENCE REPORT

In sum, the PSR seeks to apply an extraordinary enhancement to Ms. Smith's sentence without citing a single fact in support of it. On this basis alone, the enhancement cannot apply. However, even upon review of the record in this case, there is insufficient evidence establishing that Ms. Smith engaged in the conduct that the enhancement seeks to punish. Therefore, Ms. Smith respectfully requests that the Court **not** include the increase in the calculation of the offense level.

2. **Objection to Paragraphs 44 and 51 - Application of Adjustment for More than Two Threats, Pursuant to USSG § 2A6.1(b)(2)(A)**

Ms. Smith objects to application of the 2-level increase for the offense involving more than two threats. The PSR applies the increase to Counts 1 and 2.

Similar to the adjustment for conduct evidencing the intent to carry out the threats, the PSR fails to cite any facts at all or identify any victims as the basis for the enhancement.

Count 1 involved a single communication received by victim S.R. on August 11, 2018. The communication was not sent to any other persons, and S.R. did not receive any other threatening communications. As such, Count 1 involved a single threat.

Count 2 involved two communications on April 25, 2019, one received by victim S.B. and the other received by victim W.B. The communications were not sent to any other persons, and neither S.B. nor W.B. received any other threatening communications. As such, Count 2 involved two threats.

In sum, the uncontroverted facts in this case establish that there was only one threatening communication with respect to Count 1 and two threatening communications with respect to Count 2. Therefore, Ms. Smith respectfully requests that the Court **not** include the increase in the calculation of the offense level.

3. **Objection to Paragraphs 83, 84, and 85 – Inclusion of Traffic Infractions as Prior "Criminal" Convictions**

Ms. Smith objects to the inclusion in the PSR of two prior parking citations and a lane violation citation as "Prior Adult Criminal Conviction(s)."

~ 6 ~

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE PRESENTENCE REPORT

Pursuant to USSG § 4A1.2(c)(2), minor traffic infractions "are never counted." Further, the purpose of documenting the defendant's prior criminal record in the PSR is to provide the Court with information about the defendant's previous "criminal" behavior.[3] As such, only "known incidents of criminal behavior are reported in The Defendant's Criminal History."[4] Minor parking and traffic infractions do not constitute "criminal" behavior. Therefore, Ms. Smith respectfully requests that the Court order paragraphs 83, 84, and 85 **stricken** from the PSR as they are not authorized by the guidelines or Publication 107 and are not relevant to determining an appropriate sentence in this case.

### 4. Objection to Paragraph 89 – Duplicative Narrative of the Offense

Ms. Smith objects to the inclusion in the PSR of the narrative pertaining to the pending charge at paragraph 89.

As stated at paragraph 89, the pending charge pertains to the instant offense. The offense is previously described in the PSR in The Offense Conduct section at paragraphs 26 and 27. To repeat the narrative of the offense is duplicative and without probative value. Paragraph 89 would suffice to simply indicate that the arrest pertains to the instant offense and is describe in The Offense Conduct section of the report. Therefore, Ms. Smith respectfully requests that the Court order the narrative portion of paragraph 89 **stricken** from the PSR.

//
//
//

---

[3] *The Presentence Investigation Report*, Administrative Office of the United States Courts, Office of Probation and Pretrial Services, Publication 107 (Rev. March 2006), III-17.

[4] *Id.*

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE
PRESENTENCE REPORT

B.  **CRIMINAL HISTORY CALCULATION**

Ms. Smith's criminal history calculation and category as set forth in the PSR are correct. Specifically, Ms. Smith has zero criminal history points, placing her in criminal history category I, and has no prior arrests or criminal convictions

C.  **THE PROPERLY CALCULATED GUIDELINE SETENCING RANGE**

As set forth and detailed above, the properly calculated offense level in this case is 16, comprised of a base offense level of 12, pursuant to USSG §2A6.1(a)(1), and a multiple count adjustment of four, pursuant to USSG §3D1.4. With a criminal history category of I, the correct advisory sentencing guideline range is 21-27 months.

**IV.**

**A REASONABLE SENTENCE MUST BE "SUFFICIENT, BUT NOT GREATER THAN NECESSARY"**

In light of the United States Supreme Court's decision in *Booker*, the United States Sentencing Guidelines (hereinafter the "Guidelines") are advisory only.[5] The Guidelines are but one factor to be considered by the Court in fashioning an appropriate sentence,[6] to wit, a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a).[7] The Guidelines do not provide a presumptively reasonable sentence but are merely a starting point for the Court in crafting a reasonable sentence.[8] The Court is therefore charged with making an individualized assessment based on the facts presented in each case.[9]

---

[5] *United States v. Booker*, 543 U.S. 220, 245-246 (2005).

[6] *Gall v. United States,* 128 S. Ct. 586, 602 (2007); *Kimbrough v. United States,* 128 S. Ct. 558, 564 (2007).

[7] *Kimbrough,* 128 S. Ct. at 564.

[8] *Gall,* 128 S. Ct. at 596.

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE PRESENTENCE REPORT

Title 18 U.S.C. §§ 3553(a)(1)-(7) provide the Court with the following factors to consider in determining an appropriate sentence:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed-
   a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) to afford adequate deterrence to criminal conduct;
   c) to protect the public from further crimes of Ms. Smith; and
   d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3) the kinds of sentences available;
4) the kinds of sentences and the sentencing range established for-
   a) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
5) any pertinent policy statement issued by the Sentencing Commission;
6) the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and
7) the need to provide restitution to any victims of the offense.

## V.
## SENTENCING FACTORS AS APPLIED TO THE DEFENDANT

Careful analysis and consideration of the relevant sentencing factors in this case supports a sentence of no more than 21 months' imprisonment. Such a sentence is

---

[9] *Id.*

reasonable in light of all the facts and circumstances of this case, and achieves the goals of sentencing set forth in 18 U.S.C. § 3553(a) and discussed in further detail below.

### A. THE REQUESTED SENTENCE CONSIDERS THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

The properly calculated guideline sentencing range of 21-27 months considers and takes into account *all* relevant factors relating to the nature and circumstances of the instant offense, including the mailing of threatening communications and Ms. Smith's conviction on multiple counts.

The guideline sentencing range does *not* consider or take into account Ms. Smith's mental health condition and state of mind that led to her conduct in the instant offense. Specifically, Ms. Smith suffered a psychotic break after her mother was fired from her job as a hotel housekeeper after taking less than one dollar in change from a guest room she mistakenly believed was left as a tip. After her mother's firing, but before engaging in the instant offense, Ms. Smith expressed a desire to commit suicide; however, law enforcement was contacted and she was subsequently hospitalized. The instant offense ensued after Ms. Smith was released from the hospital the following day without having received necessary care or treatment.

### B. THE REQUESTED SENTENCE CONSIDERS THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

#### 1. Personal Family History

Ms. Smith was born in Baltimore, Maryland, on February 28, 1994, to Eric Hood and Annecer Peruzar (nee: Smith). She has no contact with her biological father, and looks to her stepfather, Leslie Peruzar, as a father figure. Ms. Smith's parents reside in Las Vegas, Nevada. Her siblings include a brother and sister, and a half-brother from her father's side. (*See also* Exhibit D.)

Ms. Smith's young life can only be described as an extraordinary display of gift, talent, and community involvement. Ms. Smith began walking at age seven months and started reading on her own at age three. She began playing basketball in her local league at age five, and picked up tennis at age six. Ms. Smith began to learn how to draw by watching the television show Pappyland which sought to teach children the appreciation of art. She also got involved in swimming. Unfortunately, Ms. Smith was bullied in the first grade, which caused her to lose trust in other people.

At age seven, Ms. Smith continued with basketball, tennis, and drawing. She also began modeling for Barbizon. While continuing to earn excellent grades in school, Ms. Smith's teachers expressed concerns over her apparent disconnect from others; however, her mother did not take the concerns seriously.

From age eight to 10, Ms. Smith continued to play basketball, draw, and model. She also continued to earn excellent grades in school, became an avid reader, and earned high marks on all of her projects.

At age 11, Ms. Smith played basketball with a traveling team and continued with drawing and creating artwork. She also continued to earn excellent grades in school and high marks on her projects. It was during this period that Ms. Smith's family moved to Las Vegas, Nevada. In Las Vegas, Ms. Smith played basketball at the Tarkanian Basketball Academy and was admitted into the gifted and talented program at school.

At age 12, Ms. Smith attended a magnet school where she focused on science and foreign languages and earned straight A's. She also continued to play basketball at Tarkanian.

From age 13 to 14, Ms. Smith attended middle school, where she continued to excel in school and basketball, and also continued to pursue her interest in art. (S*ee* Exhibit C). Her basketball team won the city championship. (*See* Exhibit B). Ms. Smith was also awarded First Place at the Red Rock Canyon Art Contest for her drawing of an ant in the desert. (*See* Exhibit B).

At age 15, Ms. Smith began high school. She made the girls varsity basketball team and subsequently won the state championship. (*See* Exhibit B). Ms. Smith received a scholar-athlete award based on excelling in both school and sports. (*See* Exhibit B). She also volunteered for Best Buddies, a non-profit that seeks to create opportunities and friendships for children with disabilities.

At age 16, Ms. Smith attended Veterans Tribute Career and Technical Academy, which provides high school students the opportunity to take advanced placement coursework. She also continued to play high school varsity basketball and to earn excellent grades and became a student ambassador. Ms. Smith was also recommended for the dual-credit high school program at the College of Southern Nevada (CSN). Ms. Smith obtained her first paying job as a part-time cashier at Target.

From age 17 to 18, Ms. Smith attended CSN, where she studied psychology and earned straight A's. She subsequently graduated with an Associate of Arts degree in Psychology with Honors. (*See* Exhibit B). She also graduated third in her high school class with a 4.4 grade-point-average. Ms. Smith took a break from playing basketball during this period to focus on school.

Following high school, Ms. Smith applied to numerous colleges and was accepted by all of them. She chose to attend Abilene (Texas) Christian University (ACU) to study Biblical text. Ms. Smith made the Dean's List the entire time she was at ACU, and was selected as a scholar recipient to the University of Nevada, Las Vegas (UNLV).

At age 19, Ms. Smith was awarded into the Alpha Chi National College Honor Society. She also became a member of the Biblical Text Honor Society. During this period, Ms. Smith maintained a 4.0 grade-point-average.

Ms. Smith switched her major to biochemistry and subsequently performed research on plants with her biology professor, which research was presented at the ACU Undergraduate Research Festival. She was also a member of the biology and chemistry clubs.

During this period, Ms. Smith worked at Starbucks and Tallgrass Talent Group, and worked as a scribe in the hospital for emergency room doctors. She also volunteered in the post-acute care unit at the hospital, participated in the Chemical Circus for underrepresented youths in science, and volunteered for Meals on Wheels and Habitat for Humanity. Ms. Smith also joined a group where she met with local leaders once per week, and committed to performing 40 hours of community service each school quarter.

At age 20, Ms. Smith continued to work and volunteer her time and talents. However, due to an undiagnosed mental illness, Ms. Smith began having trouble focusing and retaining information. As a result, she moved back home to Las Vegas and took a break from school. In Las Vegas, Ms. Smith worked as a scribe for several hospitals and volunteered at another hospital. She began attending UNLV, but was still struggling with her mental health condition.

At age 21, Ms. Smith continued to study biochemistry at UNLV and volunteer at the hospital, although she was no longer scribing. She was also an African-American Scholar recipient and performed research with her professors.

At age 22, Ms. Smith continued to study at UNLV, volunteer at the hospital, and conduct research with her professors. She was also an African-American Scholar recipient again, joined additional honor societies, and volunteered at church.(*See* Exhibit B).

At age 23, although she continued to struggle with her mental health, Ms. Smith maintained a high level of performance. She graduated from UNLV with a degree in biochemistry. Ms. Smith subsequently accepted a fellowship in Montevideo, Uruguay, to intern in a low-income hospital. She later returned home and shadowed an OB/GYN and a maternal-fetal medicine specialist. Ms. Smith also began preparing for the Medical College Admission Test (MCAT), and was an African-American Scholar recipient for the third time.

At age 24, Ms. Smith sat for the MCAT and applied to various medical schools. She continued to shadow doctors in the hospital and went on medical school interviews.

~ 13 ~

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE PRESENTENCE REPORT

At age 25, Ms. Smith suffered a psychotic break following the uneremonious firing of her mother from her job as a hotel housekeeper. Ms. Smith later was arrested for the instant offense and has since remained in continuous custody. During her incarceration, Ms. Smith was diagnosed with schizoaffective disorder and bipolar disease. She is now 27 years old.

Attached to this memorandum are 21 character letters written by Ms. Smith's family members, family friends, and former associates, classmates, and professors. (*See* Exhibit A). The letters uniformly attest to Ms. Smith's kindness and generosity, her passion for knowledge and motivation for success, her strong work ethic, her deep commitment to the community, and the immense positive impact she has had on others' lives as a role model. The letters ask the Court to treat Ms. Smith with mercy and grant her a second chance so that she and the community can realize the many great things she is destined to accomplish.

### 2. Physical Health

At age 22, Ms. Smith was involved in two automobile accidents, suffering severe whiplash as a result. She attended physical therapy and today is fully recovered from her injuries. Ms. Smith is otherwise in good physical health with no history of serious health problems.

### 3. Mental Health

As noted above, at age 20, Ms. Smith began experiencing symptoms of what was then undiagnosed mental illness. At age 23, she suffered a psychotic break after her mother was fired from her job. Ms. Smith expressed a desire to commit suicide and was subsequently hospitalized but quickly released without a proper diagnosis or treatment.

In November 2020, during her present incarceration, Ms. Smith was diagnosed with schizoaffective disorder and bipolar disease. She is prescribed the antipsychotic medication Geodon, and the medication Lamictal to treat her bipolar condition. Since her proper diagnosis and treatment, Ms. Smith's mental health condition has significantly stabilized.

### 4. Substance Abuse

Ms. Smith has no history of alcohol or illegal drug use or substance abuse.

### 5. Education

As described above, Ms. Smith is a high school and college graduate with a long history of significant scholastic and athletic accomplishment and community involvement.

### 6. Employment

Ms. Smith began working at age 16 as a store cashier. She has steadily held various employment positions while attending school, including working as a Lyft driver, working at Starbucks, and working as a medical scribe.

## C. THE SENTENCING GUIDELINES DO NOT CONSIDER IMPORTANT MITIGATING FACTORS

The advisory guideline sentencing range does *not* consider or take into account any of the above mitigating personal history and characteristics of Ms. Smith, including her extraordinary record of scholastic and athletic accomplishment and community involvement. The guideline sentencing range also does not fully consider the following additional important mitigating factors that are relevant to determining an appropriate sentence.

### 1. First-Time, Youthful Offender

Ms. Smith has no prior criminal record and became involved in the instant offense at age 25. Prior to the instant offense, she demonstrated that she is capable of living a high-achieving, crime-free life, and being a productive and contributing member of society. Ms. Smith is highly ambitious and hardworking, and her risk of recidivism is minimal. Based on the foregoing, a lengthy custodial sentence is neither necessary to achieve the goals of sentencing nor beneficial for society or Ms. Smith.

## D. THE REQUESTED SENTENCE ACHIEVES THE STATUTORY OBJECTIVES OF SENTENCING

Pursuant to 18 U.S.C. § 3553(a)(2), the sentence imposed needs to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### 1. The Requested Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense

A sentence of no more than 21 months' imprisonment fully reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.

Before the Court is a 27-year-old, highly-gifted, African-American woman who was on the fast track to success when mental illness befell her and contributed to a serious mistake in judgment. She has lived an accomplished and law-abiding life, and has recently made strides toward understanding and living with her mental illness. She is worthy of the Court's mercy.

### 2. The Requested Sentence Affords Adequate Deterrence to Criminal Conduct

The requested sentence affords adequate specific and general deterrence to criminal conduct. Ms. Smith's post-offense rehabilitation is a strong indicator that she is seeking to understand her conduct in the instant offense, which is central to reducing the risk of recidivism and providing deterrence from future criminal conduct. Ms. Smith's present incarceration is the first time she has been in any type of custody. Its impact has already been significant and has served to effectively deter Ms. Smith. General deterrence goals are also satisfied by the requested sentence. The clear message that a significant sentence of this type sends to the public is that it's not worth it to engage in criminal conduct, specifically, mailing threatening communications.

//

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE PRESENTENCE REPORT

### 3. The Requested Sentence Protects the Public from Further Crimes of the Defendant

As noted above, Ms. Smith no longer presents a risk to the community or public safety. She has already served significant time in custody and has sought to rehabilitate herself during her incarceration. The requested sentence will also provide for close monitoring of Ms. Smith in the community following her release. Such a sentence, therefore, fully mitigates any risk Ms. Smith may present and achieves this important goal of sentencing.

### 4. The Requested Sentence Provides the Defendant with Correctional Treatment in the Most Effective Manner

Ms. Smith's rehabilitation is already in progress. The requested sentence adequately affords Ms. Smith access to needed mental health treatment while on supervised release. A sentence in excess of 21 months' imprisonment would impose excessive punishment and would also be counterproductive in terms of Ms. Smith's rehabilitation needs.

### E. THE REQUESTED SENTENCE CONSIDERS ADDITIONAL STATUTORY SENTENCING FACTORS

Pursuant to 18 U.S.C. § 3553(a)(3)-(6), the Court shall consider the kinds of sentences available, the guideline sentencing range, any pertinent policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities.

In this case, available sentencing options range from probation to the statutory maximum sentence of five years' imprisonment on each count. The properly calculated advisory guideline sentencing range is 21 to 27 months.

As noted above, the guideline sentencing range is but one factor to be considered by the Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of sentencing. The guideline range does not provide a presumptively reasonable sentence but is merely a starting point for the Court in crafting a reasonable sentence.

~ 17 ~

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE PRESENTENCE REPORT

When an individualized assessment is made based on the unique facts of this case and the unique characteristics of Ms. Smith, a sentence in excess of 21 months' imprisonment exceeds the minimally-sufficient sentence that is required. Further, the requested sentence is consistent with sentences imposed against other defendants with similar records who have been found guilty of similar conduct.

## VI.
## CONCLUSION

In light of the foregoing and all the records before the Court, it is respectfully requested that the Court consider Ms. Smith's sentencing position set forth in this pleading, and impose a sentence that fairly and justly reflects Ms. Smith's conduct and her life.

After careful analysis and consideration of the relevant sentencing factors in this case, Ms. Smith submits that the fair and just sentence is a sentence of no more than 21 months' imprisonment.

Respectfully submitted,

DATED: November 30, 2021

*/s/ Brian A. Newman*
Brian A. Newman

Attorneys for Defendant,
LATONIA SMITH

~ 18 ~

DEFENDANT'S SENTENCING POSTION AND OBJECTIONS TO THE PRESENTENCE REPORT

PROOF OF SERVICE

I declare that I am over the age of 18 and not a party to the within action.  My business address is 3838 Carson Street, Suite 302/300 Torrance, California 90503.

    On 11/30/2021  I served the following documents: DEFENDANT LATONIA SMITH'S SENTENCING POSITION AND OBJECTIONS on the interested parties in this action by placing a true copy of each document thereof, enclosed in a sealed envelope addressed as follows:

Steven Myre
Assistant United States Attorney
VIA EMAIL: steven.myhre_usdoj.gov

Daniel Clarkson
Assistant United States Attorney
VIA EMAIL: Daniel.Clarkson@usdoj.gov

Sunny Cascio, Probation Officer
VIA EMAIL: sunny_cascio@nvp.uscourts.gov

Warren J. Geller
COFER &amp; GELLER
601 S. Tenth
Las Vegas, NV 89101
Email: wgeller@defense.vegas


(　　)　　By Mail.  I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at 3838 Carson Street, Suite 302/300 Torrance, California 90503.
(　　)　　By CM/ECF Service.  I caused said document to be delivered by CM/ECF transmission to the above addressee(s).
(XX )　　By email transmission.  I caused said document to be delivered by email transmission to the above addressee(s).
(　　)　　By FAX Service.  I caused said document to be delivered by facsimile transmission to the above addressee(s).
(　　)　　By Personal Service.  I caused the envelope to be delivered by hand to addressees at the addresses indicated.
(XXX )  (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.


                    *Sahnde Moulton*
                    SAHNDE MOULTON