UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LATONIA SMITH, <br><br> Defendant. | Case No.: 2:19-cr-00304-WQH-VCF / 2:23-cv-02083-WQH <br><br> **ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion"), filed by Defendant Latonia Smith. (ECF No. 307.)

## BACKGROUND

On October 29, 2019, United States Postal Inspector Justin Steele submitted an Application for a Search Warrant ("October 29 Application") to United States Magistrate Judge Daniel Albregts seeking to search and seize materials at Defendant's residence in Las Vegas, Nevada. Steele's affidavit accompanying the October 29 Application recounted a series of threatening communications via Facebook and the United States mail received by an employee of Planet Hollywood Resort and Casino ("Planet Hollywood") in Las Vegas, employees of the Fennemore Craig Law Firm in Las Vegas and Reno, and the spouse of a Fennemore Craig employee. These communications included violent and graphic language. For example, a letter received by two Fennemore Craig employees and the spouse of a Fennemore Craig employee on October 1, 2019 began: "Your throat will

1

be slit you will be recorded as the blood spills from your neck and just as you gasp to take your undeserving final breath three bullets will be placed right through your skull." (ECF No. 313-1 at 000167-68.) This letter continued at length with similar language and included threats to "slaughter[]" the recipients' relatives and friends, and stated that, "[w]hen you least expect it you will beg for your lives and your childrens [sic] lives." *Id*. at 000168. Another letter began, "Congratulations you have just been added to the hit list," and another letter specified that it was a "REAL THREAT." *Id*. at 000165, 000166.

Inspector Steele's affidavit in the October 29 Application asserted that "there is probable cause to believe that Latonia Smith transmitted threatening communications through the internet and through the United States mail, all in violation of Title 18, United States Code, Section 875 and 876," because:

> [T]he threatening communications began shortly after [the Planet Hollywood employee who received the communications] terminated [Annecer] Peruzar's employment with Planet Hollywood; Ms. Smith is the daughter of Ms. Peruzar; the first communication specifically references 'my mother,' the first and subsequent communications reference the same themes of workplace discrimination, wrongful termination, injustice, racism, and abuse by management and/or by [the Planet Hollywood employee]; Ms. Smith filed her own civil action against Caesar's [Entertainment, which owned Planet Hollywood,] and the law firm defending Caesar's, all in connection with Ms. Peruzar's employment litigation; the threatening communications extended to Fennemore Craig attorneys and employees involved in the civil litigation; the communications relate closely in time either to the event of Ms. Peruzar's termination or to the subsequent litigation; and the letters are addressed using the same convention of printing the address separately and affixing it to the outside of the envelope.

(ECF No. 313-1 at 000169.)

On October 29, 2019, Judge Albregts issued a Search and Seizure Warrant ("October 29 Warrant") authorizing the search of Defendant's residence and the seizure of the following:

> All documents relating to the creation or transmission of threats or threatening communications, including documents containing threatening communications.

2

>Any materials used to create or transmit threats or threatening communications including but not limited to: electronic printers, templates, cardstock, artwork, laminate stock, laminators, and reflective paint.
>
>Computers, peripherals, and all other electronic equipment used in connection with creating or transmitting threats or threatening communications, including but not limited to: computers, scanners, color printers, digital cameras, copy machines, internet access devices, and graphic design software.
>
>Any electronic data storage devices used in connection with computers to create, store or transmit threats or threatening communications, including but not limited to: internal or external hard drives, removable hard drives, removable storage devices (e.g. thumb or flash drives), compact discs or other optical storage devices, and other memory storage devices.
>
>The word "communication" is defined as any means of transmitting and storing information, including, without limitation, electronic signals commonly referred to as e-mail, text messages, instant messages, tweet, voice-mail, voice-messaging, private messages, video calling history, "Friend" requests, status updates; Instagram messages, electronic recordings, or other electronic means of transmitting information, including all associated metadata if stored and/or recorded in an electronic medium.
>
>The word "document" is defined as any information, communication or historical event recorded in any form or medium (paper or electronic), including, without limitation: activity logs, photographs, status updates, comments, "Friend" lists, "Friend" requests, "News Feed information," IP logs, "Neoprint," photographs, "likes," chat histories, gifts, pokes, tags, memoranda, letters, transmittals, notes, compilations, summaries, charts, receipts, invoices, bills, deposit slips, checks (front and back), forms, ledger entries, journal entries, diary entries, calendar entries, database entries, drawings and/or diagrams, and any and all associated metadata associated with information stored and/or recorded in an electronic medium.

*Id*. at 000189-90. The October 29 Warrant contained detailed "protocol for the electronic data seized pursuant to this Search Warrant," and stated that the warrant must be executed on or before November 12, 2019. *Id*. at 000185, 000191.

On November 1, 2019, Steele submitted an Application to Supplement the October 29 Warrant to United States Magistrate Judge Brenda Weksler ("November 1 Application"). In the accompanying affidavit, Steele stated that, on the evening of October 31, 2019, an attorney employed by Fennemore Craig, who had previously received a threatening communication described in the October 29 Application, was confronted by Defendant at his apartment in Reno. *See id*. at 000210. Steele stated that Defendant was brandishing "a matte black semi-automatic handgun" and entered the attorney's apartment. *Id*. Steele stated that, after a struggle, the attorney ran to a neighbor's apartment, where he called 911. *Id*. at 000211. Steele stated that when the police arrived, Defendant had left the property. *Id*. Steele stated:

> I know from my training and experience that cell phones are used to navigate via GPS. I also know that cell phones register, or ping, on cellular towers when used to navigate, place calls, or even when in passive receive mode. Accordingly, any cell phone used to travel from Las Vegas to Reno, or Reno to Las Vegas, to commit the assault on [the Fennemore Craig attorney] is likely to contain evidence of location monitoring, navigation, or registration on cell phone towers and thus constitute evidence of the Subject Offenses.

*Id*. The November 1 Application requests authorization to search for and seize "Cellular telephone devices, and any records associated with the use of those Devices," and "Any firearm or ammunition." *Id*. at 000212.

According to a Return completed by Steele, Defendant's residence was searched on November 1, 2019, between 9:32 PM and 10:52 PM. (ECF No. 312 at 000886.) Among the items seized were four cellular telephones, two electronic tablets, a laptop computer, a desktop computer, and a "Glock 17 replica air gun." *Id*.

Two hours after the search of Defendant's residence began, at 11:32 PM on November 1, 2019, Judge Weksler signed a Search and Seizure Warrant ("November 1 Warrant") as requested in the November 1 Application to Supplement the October 29 Warrant. (ECF No. 313-1 at 000205.)

1    On November 20, 2019, a grand jury returned an Indictment charging Defendant with five counts of Mailing Threatening Communications, in violation of 18 U.S.C. § 876(c). (ECF No. 19.)

After numerous pretrial proceedings, Defendant's case was tried to a jury commencing on April 22, 2021. (ECF No. 215.) At trial, the Government introduced evidence that was extracted from Defendant's iPhone "that was recovered pursuant to th[e] search warrant" executed on November 1, 2019. (*See* Trial Trans. at 22, ECF No. 244.) At trial, Steele testified that there was nothing of evidentiary value found on the other electronic devices seized from Defendant's residence on November 1, 2019, and nothing else seized from Defendant's residence was offered at trial. *Id*. at 71-72. The "Glock 17 replica air gun" recovered from Defendant's residence was not referenced at trial based upon the trial court's grant of Defendant's motion in limine to exclude the evidence. (*See* ECF No. 209, granting ECF No. 187.)

On April 29, 2021, the jury returned a verdict of guilty on all counts in the Indictment. (ECF No. 234.)

On February 3, 2022, Defendant was sentenced to 36 months in the custody of the Bureau of Prisons as to each count, to run concurrently to one another, followed by a three-year term of supervised release. (ECF No. 277.)

On February 10, 2022, Defendant filed a Notice of Appeal. (ECF No. 278.)

On March 15, 2023, the Court of Appeals for the Ninth Circuit issued a Memorandum Opinion affirming the Judgment of conviction. (ECF No. 305; *see also* ECF No. 306 (Mandate of the Court of Appeals).)

On December 15, 2023, Defendant, proceeding pro se, filed the pending Section 2255 Motion. (ECF No. 307.)

On January 24, 2024, the Government filed a Response in opposition to the Section 2255 Motion. (ECF No. 311.)

On February 22, 2024, Defendant filed a Reply, accompanied by an attachment.[1] (ECF No. 312.)

On April 4, 2024, the Government filed a Surreply and new exhibits. (ECF No. 313.)

On June 27, 2024, Defendant filed a Sur-Surreply and new exhibits. (ECF No. 318.)

On July 3, 2024 and July 18, 2024, Defendant filed Motions for Modification of her Sur-Surreply.[2] (ECF Nos. 321 & 323.)

## CONTENTIONS OF THE PARTIES

In the Section 2255 Motion, Defendant contends:

> The second warrant [i.e., the November 1 Warrant] was sought precisely because the first warrant [i.e., the October 29 Warrant] did not authorize the seizure of items resembling cell phones. Because the officers seized cell phones without the authority of a judicial warrant, their seizure was unconstitutional and should have been suppressed. Trial counsel's failure to seek to suppress evidence based on a violation of Ms. Smith's Fourth Amendment rights is beyond the pale of an objectively reasonable strategy….
>
> Because there is a reasonable probability that the cell phone evidence would have been suppressed and of a different result at trial had the cell phone evidence been suppresses, trial counsel's failure to move to suppress was prejudicial.

(ECF No. 312 at 1-2.)

In its Surreply, the Government contends:

---

[1] In its Response, the Government asserts that the Section 2255 Motion should be summarily denied because "Smith offers nothing beyond conclusory generalities and she has failed to carry her burden to set forth facts that would entitle her to relief," and "[w]hile Smith's petition does include a notation that reads 'See attached…,' no attachment appears on either the motion filed on the Court's docket, nor the copy served on the government." (ECF No. 311 at 6.) In her Reply, Defendant includes the 22-page attachment that she asserts she "submitted … to the court with the petition" but "appears … was not scanned into the system." (ECF No. 312 at 1.) Upon review of the Court docket, Defendant is correct that she submitted the 22-page attachment with her original Section 2255 Motion, but it was filed by the Clerk of Court under seal at ECF No. 308 and a copy apparently was not served upon the Government at the time. The Court orders ECF No. 308 to be unsealed. The Court considers the attachment filed at ECF No. 308 (and publicly refiled with Defendant's Reply at ECF No. 312) to be part of the Section 2255 Motion and the Government's request to summarily deny the Section 2255 Motion is denied.

[2] Defendant's Motions for Modification of Defendant's Sur-Surreply are granted. (ECF Nos. 321 & 323.)

> Smith's claim rests exclusively on a warrant return which indicates that law enforcement completed a search of her residence before a supplemental search warrant was issued. However, the original warrant authorizing the search of Smith's residence authorized the seizure of "[c]omputers, peripherals, and all other electronic equipment used in connection with creating harassing and threatening communications, including but not limited to:… internet access devices" as well as "[a]ny electronic data storage devices used in connection with harassing and threatening communications." Accordingly, while agents obtained a supplemental in an abundance of caution, Smith's smartphones were properly seized pursuant to the initial warrant, which was issued long before law enforcement executed the search. Smith's counsel was therefore not ineffective for declining to pursue a motion to suppress on these grounds.
>
> Furthermore, review of the warrant return indicates that the agent who seized Smith's personal iPhone, which was the smartphone upon which the government relied at trial, did not participate in the search of the house. Because law enforcement seized the relevant evidence used against Smith at trial pursuant to her arrest, and that arrest itself was pursuant to a warrant, Smith suffered no prejudice from her counsel's decision not to seek to suppress items seized during the search of her home. Smith's claim therefore fails for this independent reason as well.

(ECF No. 313-1 at 2-3 (citations omitted).)

In her Sur-Surreply, Defendant contends that "[t]he iPhone labeled as Defendant's was located inside the home and collected from inside the home with all other items." (ECF No. 318 at 2.) Defendant also contends that "[t]he first warrant would have been overbroad with respect to cell phones." *Id.*; *see also* ECF No. 321 at 1. Defendant also asserts that "the Government planted evidence on her phone after the phone was illegally seized." (ECF No. 318 at 3.)

## STANDARD OF REVIEW

A federal prisoner making a collateral attack on the validity of her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. Section 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that

>   the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To warrant the granting of relief, the movant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). Such relief is warranted where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974); *see also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."). Claims of ineffective assistance of counsel are an exception and may be raised on collateral review even if they were not raised on direct appeal. *See Massaro*, 538 U.S. at 504 ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether the petitioner could have raised the claim on direct appeal."); *United States v. Jackson*, 21 F.4th 1205, 1212 (9th Cir. 2022) ("[I]neffective assistance of counsel claims may be brought in collateral proceedings under § 2255.").

**RULING OF THE COURT**

Defendant contends that her attorneys rendered ineffective assistance by failing to move to suppress evidence derived from her iPhone seized from her residence. There is a two-prong standard for judging a criminal defendant's contention that the Constitution

requires a conviction to be set aside because counsel's assistance at trial was ineffective. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 687-88. In making this showing, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See id.* at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *See id.* at 688-90. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). "Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Id.* at 6.

Second, the defendant must affirmatively prove prejudice. *See Strickland*, 466 U.S. at 691-92. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.* The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing regarding just one. *See id.* at 697; *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

To assess the two *Strickland* prongs, the Court examines the viability of a potential Fourth Amendment motion to suppress evidence derived from Defendant's iPhone seized from her residence.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Courts analyze the "specificity" requirement through "two aspects … particularity and breadth." *United States v. SDI Future Health, Inc.*, 568

F.3d 684, 702 (9th Cir. 2009) (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856 (9th Cir. 1991)). "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id*. (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d at 856-57). "Particularity means that the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize. The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *Id*. (quotation omitted). "This requirement prevents general, exploratory searches and indiscriminate rummaging through a person's belongings. It also ensures that the magistrate issuing the warrant is fully apprised of the scope of the search and can thus accurately determine whether the entire search is supported by probable cause." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (citations omitted). "However, the level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought. Indeed, warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *SDI Future Health, Inc.*, 568 F.3d at 702 (quotations omitted). In determining whether a warrant is sufficiently particular, courts "consider one or more of the following factors":

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006) (quoting *Spilotro*, 800 F.2d 963).

The Court focuses solely on the October 29 Warrant, because the warrant Return indicates that Defendant's residence was searched prior to the time Judge Weksler granted

the November 1, 2019 Warrant. The October 29 Warrant authorized the seizure of "[c]omputers, peripherals, and all other electronic equipment used in connection with creating or transmitting threats or threatening communications, including but not limited to … internet access devices," as well as "[a]ny electronic data storage devices used in connection with computers to create, store or transmit threats or threatening communications, including but not limited to: internal or external hard drives … and other memory storage devices." (ECF No. 313-1 at 000189.) A "smartphone," such as Defendant's seized iPhone, is a form of a "computer" or "other electronic equipment." The iPhone also is an "internet access device," an "electronic data storage device," and a "memory storage device." For example, the Cambridge Dictionary defines "smartphone" as "a cell phone that can be used as a small computer and that connects to the internet."[3] In *Riley v. California*, 573 U.S. 373, 393 (2014), the Supreme Court stated: "The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." *See id*. at 379 ("[T]he phone was a 'smart phone,' a cell phone with a broad range of other functions based on advanced computing capability, large storage capacity, and Internet connectivity."). Similarly, the Court of Appeals for the Ninth Circuit has equated laptop computers and smartphones for Fourth Amendment purposes. *See United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019) ("The Court's view of cell phones in *Riley* so closely resembles our own analysis of laptop computers in [*United States v.*] *Cotterman*[, 709 F.3d 952 (9th Cir. 2013),] that we find no basis to distinguish a forensic cell phone search from a forensic laptop search."). The Third Circuit specifically has held that cell phones are included in the term "computer hardware" in a warrant. *United States v. Horton*, 638 F. App'x 126, 129 (3d Cir. 2016) ("The warrant, as written, defines 'computer hardware' broadly. Horton does not and cannot argue that his cell phone is not 'computer hardware' as it is defined in the warrant,

---

[3] *See* https://dictionary.cambridge.org/us/dictionary/english/smartphone.

which includes '*any equipment*' capable of transmitting computer data."). The Court finds that Defendant's seized iPhone fits within the scope of the broad language of electronic equipment authorized to be seized by the October 29 Warrant.

Steele's lengthy affidavit in support of the October 29 Warrant amply demonstrates probable cause to seize the items described in the October 29 Warrant, including Defendant's iPhone. (*See* ECF No. 313-1 at 000160-84.) The October 29 Warrant's description of items to be seized, including the above-quoted language and detailed definitions of "communication" and "document," are adequately tailored to the particular facts and circumstances establishing probable cause described in the affidavit. The October 29 Warrant objectively describes the items to be searched and seized with adequate specificity and sufficiently restricted the discretion of agents executing the search. As was the case in *Adjani*, 452 F.3d at 1148, the October 29 Warrant affidavit adequately limits the search for evidence of "threatening communications." (*See* ECF No. 313-1 at 000160-62, 000171.) Although the October 29 Warrant contains "including but not limited to" language, the context of the warrant limiting officers to searching and seizing materials involving threatening communications being transmitted in the mail or interstate commerce, as described in detail in the affidavit, "adequately limits the scope of the search and thus prevents it from being overbroad." *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000) ("Appellant argues that the inclusion of the words 'may include, but is not limited to' and 'other items' in the search warrant rendered it impermissibly overbroad…. [T]he catch-all phrases of which Reeves complains exist in the context of authorization for a search for 'evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine.' This context adequately limits the scope of the search and thus prevents it from being overbroad.") (citing *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986) (finding that a warrant authorizing seizure of "records, notes, [and] documents indicating [the defendant's] involvement and control of prostitution activity including but not limited to, photographs, handwritten notes, ledger books," was not overbroad, because the warrant "effectively tells the officers to seize only items

indicating prostitution activity")). The October 29 Warrant includes a detailed protocol for searching the electronic data seized pursuant to the warrant (*see* ECF No. 313-1 at 000191-95), and "[s]uch specificity increases our confidence that the magistrate judge was well aware of what he was authorizing and that the agents knew the bounds of their authority in executing the search." *Adjani*, 452 F.3d at 1149 n.7. The Court finds that the October 29 Warrant adequately sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not.

The third particularity factor is "whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Adjani*, 452 F.3d at 1148 (quotation omitted). The affidavit supporting the October 29 Warrant describes in detail threatening communications, including three communications to a named Planet Hollywood employee on Facebook and multiple letters containing threatening communications which apparently were generated on word processing programs. The affidavit quotes these threatening communications verbatim and states the exact date on which each communication was received by each named recipient. In light of these specific facts, the October 29 Warrant reasonably authorized law enforcement to search for the enumerated materials in any "electronic equipment used in connection with creating or transmitting threats or threatening communications." (ECF No. 313-1 at 000189.) The Government has adequately shown that it was not able to describe the items to be searched and seized "more particularly in light of the information available to it at the time the warrant was issued." *Adjani*, 452 F.3d at 1148 (quotation omitted).

After considering the relevant factors, the Court finds that the October 29 Warrant is sufficiently particular, not overbroad, and satisfies the Fourth Amendment's specificity requirement. Moreover, even if the warrant were deficient, the Court would find that the good faith exception to suppression applies. The Government has adequately shown that Steele was not "dishonest or reckless in preparing [his] affidavit" and he "harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984).

      Defendant asserts that "[t]he second warrant [i.e., the November 1 Warrant] was sought precisely because the first warrant [i.e., the October 29 Warrant] did not authorize the seizure of items resembling cell phones." (ECF No. 312 at 1.) Defendant relies upon Steele's statement in the November 1 Application that he sought to "expand the list of Items to Be Seized to include any firearms and cellular telephone devices." (ECF No. 313-1 at 000209; *see also* ECF No. 323 at 1.) However, "because our inquiry is an objective one, … we need not be concerned with the state of mind of the officer who executed the warrant." *United States v. Hurd*, 499 F.3d 963, 968 n.5 (9th Cir. 2007) (citing, *inter alia*, *United States v. Ewain*, 88 F.3d 689, 694 (9th Cir. 1996) (holding that an officer's subjective intent is irrelevant to the determination of whether a search is within the scope of a warrant)). "A policeman's pure heart does not entitle him to exceed the scope of a search warrant, nor does his ulterior motive bar a search within the scope of the warrant, where the warrant was properly issued." *Ewain*, 88 F.3d at 694. As discussed above, Defendant's seized iPhone fits within the scope of the electronic equipment authorized to be seized by the October 29 Warrant, regardless of Steele's subjective belief.[4]

---

[4] Even if Steele's subjective belief were relevant, it would not change the outcome of the Section 2255 Motion. A review of Steele's affidavit supporting the November 1 Application illustrates his motivation for seeking to supplement the October 29 Warrant. The affidavit supporting the November 1 Warrant recounts the October 31, 2019, physical confrontation between Defendant—who resided in Las Vegas—and an attorney employed by Fennemore Craig (who had previously received a threatening communication described in the October 29 Application) at the attorney's residence in Reno. (ECF No. 313-1 at 000210-11.) The affidavit states that "any cell phone used to travel from Las Vegas to Reno, or Reno to Las Vegas, to commit the assault on [the Fennemore Craig attorney] is likely to contain evidence of location monitoring, navigation, or registration on cell phone towers and thus constitute evidence of the Subject Offenses." *Id*. at 000211. The affidavit contains no new facts or discussion related to cell phones containing evidence of threatening communications; this subject was covered exclusively (and sufficiently) in the affidavit supporting the October 29 Warrant. Therefore, it is clear from the November 1 affidavit that the motivation for supplementing the October 29 Warrant was not a belief that evidence of cell phones containing evidence of threatening communications was not covered by the October 29 Warrant. Instead, the apparent motivation was to expand the search parameters of the seized cell phone(s) to include "evidence of location monitoring, navigation, or registration on cell phone towers," a subject which was not included in the October 29 Warrant. No evidence of location monitoring, navigation, or cell towers was ultimately introduced at Defendant's trial.

The Court finds that Defendant has failed to demonstrate that her counsel's performance fell below an objective standard of reasonableness or that she suffered prejudice based on counsel's failure to move to suppress evidence derived from Defendant's seized iPhone.

In the Sur-Surreply, Defendant contends for the first time that "the Government planted evidence on [Defendant's] phone." (ECF No. 318 at 3.) The Court does not address the merits of this claim for multiple, independent reasons. First, because Defendant raised this argument for the first time in her Sur-Surreply, the argument is waived. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Second, Defendant's entire argument on this claim of Government misconduct consists of a single sentence. Defendant offers no details indicating what evidence was purportedly "planted … on her phone," and whether this evidence was introduced at trial. "[B]ald, conclusory or inherently incredible assertions … do not require an evidentiary hearing" when considering a § 2255 motion. *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004); *see also United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) ("[T]he [section 2255] petitioner is … 'required to allege specific facts which, if true, would entitle him to relief.'") (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

Finally, Defendant has made no attempt to show cause and prejudice for failing to raise this claim of Government misconduct related to "planted evidence" on direct appeal. *See Massaro*, 538 U.S. at 504; *Ratigan*, 351 F.3d at 962. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Defendant makes no attempt to show actual innocence. *Cf. Ratigan*, 351 F.3d at 965 ("To establish actual innocence, [a petitioner] must now demonstrate in light of all the evidence,

including new evidence that might be introduced by both sides, that it is more likely than not that no reasonable juror would have convicted him.") (quotation omitted). "The 'cause and prejudice' test for excusing the failure to raise a claim on direct appeal will apply, for example, where the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where 'interference by officials' may have prevented the claim from being brought earlier." *Braswell*, 501 F.3d at 1150 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id*. (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Defendant offers no argument or evidence of what material was allegedly "planted on her phone," why she failed to raise the issue at the time of trial or the subsequent appeal, and how the allegedly "planted" evidence "worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *Id*.

Defendant also requests an evidentiary hearing. The Court finds, for the reasons discussed above, that the Section 2255 Motion fails to adequately allege facts which would entitle Defendant to relief, and the Section 2255 Motion and record of the case conclusively shows that she is not entitled to relief.[5] Accordingly, the Court finds that Defendant's claims may be resolved on the record and do not require an evidentiary hearing. *See United States v. Rodriguez-Vega*, 797 F.3d 781, 792 (9th Cir. 2015).

---

[5] There is a factual dispute as to whether the iPhone introduced at trial was found by the agents in a filing cabinet inside Defendant's residence, as asserted by Defendant (*see* ECF No. 318 at 2), or found on Defendant's person as part of a search incident to Defendant's arrest, as asserted by the Government (*see* ECF No. 313-1 at 8). Because the Court finds that the Section 2255 Motion must be denied even assuming the truth of Defendant's assertion about where the iPhone was found, the Court does not conduct an evidentiary hearing to resolve this factual dispute.

A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this threshold substantial showing, the movant must "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Courts "will resolve any doubt about whether the petitioner has met the *Barefoot* standard in [her] favor." *Id*. (citation omitted). The Court finds that the *Barefoot* standard has been satisfied as to the claim in the Section 2255 Motion that Defendant's trial counsel rendered ineffective assistance by failing to move to suppress evidence derived from the seized iPhone. A certificate of appealability is granted as to this issue.

## CONCLUSION

IT IS HEREBY ORDERED that the Section 2255 Motion is denied (ECF No. 307), the Motions for Modification of Defendant's Sur-Surreply are granted (ECF Nos. 321 & 323), and the filing at ECF No. 308 shall be unsealed.

A certificate of appealability is granted as to the issue of whether Defendant's trial counsel rendered ineffective assistance by failing to move to suppress evidence derived from the seized iPhone.

The Clerk of Court shall enter judgment in Case Number 2:23-cv-02083-WQH. Case Number 2:19-cr-00304-WQH-VCF remains closed.

Dated: July 29, 2024

Hon. William Q. Hayes
United States District Court